ALBANY,
Feb. 1828.

*CUNNINGHAM *against* BUCKLIN.

Cunningham
v.
Bucklin.

ON demurrer to the special plea. The declaration contained three counts, which were in case against the defendants for alleged corruption and misconduct as a commissioner in discharging an insolvent who was indebted to the plaintiff. The counts were substantially alike in particulars. They alleged that the plaintiff was a creditor of one Shepherd, and sued him by *capias* returnable at August term, 1824. That Shepherd put in special bail to the action. That on the 14th of September, 1824, while the suit was pending, Shepherd petitioned the defendant, Bucklin, a commissioner to perform certain duties of a judge of the supreme court, praying for the benefit of the insolvent act, of April 7th, 1819, (sess. 42, ch. 101,) to abolish imprisonment for debt in certain cases. That the defendant, Bucklin, made an order for the creditors to show cause against Shepherd's discharge, on the 9th of December, 1824. That Cunningham appeared for that purpose, of which the defendant, Bucklin, had notice; but that neither Shepherd, nor any person on his behalf appearing, the defendant, Bucklin, adjourned the hearing of the matter to the 11th of December, then instant. That the plaintiff then appeared, of which the defendant, Bucklin, had notice. But Shepherd did not appear, nor any one on his behalf; having left the state and gone to reside *in Michigan on the 1st of November, 1824; whereupon the defendant, Bucklin, de-

An action will not lie for official misconduct in a judicial officer, though of special and limited jurisdiction, and though such misconduct be corrupt and malicious, if a statute declare his own record to be conclusive evidence in all courts, of the facts therein contained. *E. g.* A commissioner to do certain duties of a judge of the supreme court, granting an insolvent discharge under the act to abolish imprisonment for debt in certain cases, (sess. 42, ch. 101.) Where such commissioner adjourned the [*179] hearing of an insolvent twice, and the

second time declared that the procceedings were dismissed, in the presence of a creditor of the insolvent; but afterwards granted a discharge without notice to the creditor, whereby he lost his debt; and the discharge recited a regular adjournment to the day of the discharge; yet held, that no action would lie against the commissioner, though he acted corruptly; the discharge being conclusive evidence in his favor.

*Held*, also, that this was not a case of a want of jurisdiction.

*Semb.* at common law, a judge of a court of record is never accountable in a civil action for misconduct as such judge, though he act corruptly.

But commissioners to grant discharges under the insolvent act, do not come within the rule, not being, as such, judges of a court of record. Their exemption depends on the statute.

The authorities relative to judicial irresponsibility at common law, cited and commented upon. Per SAVAGE, Ch. J., in delivering the opinion of the court.

In an action against one for misconduct, whereby special bail are discharged, it is sufficient in substance, and on general demurrer, to aver that the principal could not be found to satisfy the plaintiff, whereby he lost the debt, without showing that a *ca. sa.* issued, and was returned *non est inventus*.

ALBANY,
Feb. 1828.

Cunningham
v.
Bucklin.

clared that he dismissed further proceeding and prosecution of the matter. That the plaintiff recovered a verdict at the Jefferson circuit, on the 20th of June, 1825, for $27 190, against Shepherd, upon which the plaintiff was entitled to judgment and execution against Shepherd's property and body, and in case his body was not surrendered, an action would have accrued against his bail. That Shepherd continued to reside in Michigan from the 1st of November, 1824, till the 2d of July, 1825, when he returned to this state; and the defendant Bucklin, corruptly colluding and conspiring with Shepherd, to prevent the plaintiff from availing himself of his verdict, without any notice to his creditors, and without any adjournment of the hearing, from the 9th of December, 1824, deceitfully, corruptly, fraudulently, collusively and maliciously, and under color and pretence that the hearing had been adjourned from that time to the 2d of July, discharged Shepherd, (setting forth the discharge in hæc verba, which expressly recited the adjournment from the 9th of December, to the 2d of July.) That the recital of the adjournment to the 2d of July, was false; and that on the 5th of July, Shepherd returned to Michigan, where he continued to reside. That at August term, 1825, judgment was perfected on the verdict; but no property could be found to satisfy it; Shepherd's body had not been surrendered, and could not be found; and that on the 22d of March, 1826, the bail were released from their recognizance on the ground of the insolvent discharge; whereby the plaintiff lost his debt, and had sustained 100 dollars damages in endeavoring to vacate the discharge of the bail; concluding in damages to 800 dollars.

The defendant, Bucklin, pleaded (secondly) that he being a commissioner to perform certain duties of a judge of the supreme court, Shepherd, being an insolvent debtor, &c.,

[*180]

presented his petition, (setting it forth) as alleged in *the declaration, praying for a discharge, &c., (the usual allegations giving the commissioner jurisdiction.) And that such proceedings were thereupon had before him, the defendant Bucklin, as such commissioner, according to the

(a) Vid. 5 Cowen, 289.

statute; that at a hearing before him, sitting as such commissioner, on the 2d day of July, 1825, it appeared that Shepherd had conformed in all things to the provisions of the insolvent act; and that the defendant, Bucklin, as such commissioner, and not otherwise, did order, adjudge and decide, that Shepherd was an insolvent debtor, and did thereupon order an assignment, &c., and discharge Shepherd according to the form of the act; setting forth the discharge *in hæc verba* as in the declaration; and averring that it remained in full force and effect.

Demurrer, assigning as causes, 1. That the plea was no answer to the bill; 2. That it did not deny the charges in the bill, nor confess and avoid them; 3. That the gist of the bill being the fraud and collusion of the defendant, the plea forms no answer to such charge; 4. That the plea is a reiteration of facts stated in the bill, with an averment that the discharge is not reversed or vacated.

Joinder in demurrer.

*C. E. Clarke* and *J. Platt,* in support of the demurrer.

*Talcott,* (attorney general,) contra.

The arguments proceeded much on the question of judicial responsibilty; but this not being deemed the material point by the court, they are, therefore, omitted.

*Curia, per* SAVAGE, Ch. J. The principal question argued, though I think not necessarily involved in the demurrer, is, whether a judge of a court of record is responsible for a corrupt exercise of his office?

The question upon the record is, whether malicious and corrupt conduct in his office can be alleged and proved against a person acting under a special and limited jurisdiction, in contradiction to his own record, which is declared by statute to be conclusive evidence?

[*181.

*The declaration expressly charges that the defendant acted corruptly and maliciously and without jurisdiction, in granting Shepherd's discharge. The plea sets forth the insolvency and petition upon which the proceedings were founded; and then avers that such proceedings were had

that Shepherd was discharged : but does not traverse the facts specially alleged, that he acted without jurisdiction, and corruptly and maliciously. The plea is certainly not a full answer to the declaration ; aud would seem, therefore, to be bad in an ordinary case of plead ing.

But it was contended that the declaratioin is bad in substance, inasmuch as it shows no damage ; that it contains no averment of the issuing of a *ca. sa.* against Shepherd, and *non constat* but that he might have paid the plaintiff's demand, if charged in execution. The averment is, that he could not be found to satisfy the plaintiff. This is sufficient upon general demurrer. Had the defendant demurred specially to the declaration, it might have been held otherwise. Whether it would, we need not now decide. The charge in the declaration is substantially stated, that by means of the defendant's irregular and unlawful and corrupt conduct as a commissioner, under the act of 1819, the body of Shepherd was discharged from imprisonment, in consequence of which the plaintiff lost his debt. For the purposes of the present discussion, these facts must be considered as admitted : they are admitted on the record by the pleadings.

The general question then, is, whether the facts alleged can avail the plaintiff in the present suit ? In deciding this question, it will be found, on inquiry, that the law of judicial irresponsibility is, as I before remarked, out of the case.

"The doctrine which holds a judge exempt from a civil suit or indictment, for any act done or omitted to be done by him sitting as judge," (says Kent, Ch. J., 5 John. 291,) " has a deep root in the common law." In the case of *Yates* v. *Lansing*, (5 John. 282, and 9 John. 395,) the question of judicial inviolability was fully discussed, both *by the counsel and by the court ; but the question in that case was whether the chancellor had acted without jurisdiction in imprisoning the plaintiff, and was, therefore, personally liable ; not whether the chancellor or a judge would be liable civilly for corrupt conduct in his office Many of the English cases cited, assert the total exemp-

[*182]

tion of judges of record from responsibility or accountabil-
ity in any way, except to the king by whom they were ap-
pointed, and in whose name and stead they administer
justice. *Hawkins* says, (B. 2, ch. 72, § 6,) " And as the
law has exempted jurors from the danger of incurring any
punishment in respect of their verdict in criminal cases, it
hath also freed the judges of all courts of record from all
prosecutions whatsoever, except in the parliament, for any
thing done by them openly in such courts as judges. For
the authority of a government cannot be maintained, unless
the greatest credit be given to those who are so highly in-
trusted with the administration of public justice; and it
would be impossible for them to keep up in the people
that veneration of their persons, and submission to their
judgments, without which it is impossible to execute the
laws with vigor and success, if they should be continually
exposed to the prosecutions of those whose partiality to
their own causes would induce them to think themselves
injured. Yet, if a judge will so far forget the dignity and
honor of his post, as to turn solicitor in a cause which he
is to judge, and privately and extrajudicially tamper with .
witnesses or labor jurors, he hath no reason to complain
if he be dealt with according to the same capacity to which
he so basely degrades himself." *Hawkins* is here treating
of conspiracy; and by the latter sentence, no doubt, in-
tends to say, that judges who so conduct are liable to a
prosecution for conspiracy. That is the subject treated of
in this chapter. In 12 Co. 25, is stated the case of one
Nudigate, who was a justice of the peace, and had recorded
a force upon view, which he did as judge upon record, and
a bill was exhibited against him for this; that he had false-
ly made a record when indeed there was not any force; and
by the opinions of *Catlin* and *Dyer*, chief justices, it *was
resolved, " that that thing that a judge doth as judge of
record ought not to be drawn in question." *Holt*, Ch. J.,
says, " A judge is not answerable either to the king or the
party for the mistakes or errors of his judgment in a mat-
ter of which he has jurisdiction; it would expose the justice
of the nation; and no man would execute the office upon

[*183]

peril of being arraigned by action or indictment for every judgment he pronounces." (*Groenvelt* v. *Burwell*, 1 Salk. 396.) In another report of the same case, (12 Mod. 389,) his language is stated rather more strongly; " Then, if the censors in this case are judges of record, the consequence is very strong that no act of theirs, which they do as judges, is traversable; and no averment receivable that a judge of record has acted against his duty. A judge of oyer and terminer was indicted, for that he, being a judge, and one being indicted before him for trespass, he made up the record to be for felony; and adjudged the indictment did not lie, and it was quashed; and that it should never be averred but that it was for felony, nor could a judge be supposed guilty of such an offence." The case of *Hamond* v. *Howell*, recorder of London, (2 Mod. 218,) had been previously decided, containing the doctrine that no action lies. In *Miller* v. *Seare*, (2 Bl. 1141,) De Grey, Ch. Justice, says, " It is agreed that the judges in the king's superior courts of justice are not liable to answer personally for their errors in judgment. In courts of special and limited jurisdiction, having power to hear and determine, a distinction must be made. While acting within the line of their authority, they are protected as to errors in judgment; otherwise they are not protected." Lord Mansfield says, (Cowp. 172,) " If an action be brought against a judge of record for an action done by him in his judicial capacity, he may plead that he did it as judge of record, and that will be a complete justification." In the case of *Yates* v. *Lansing*, (5 John. 282,) these cases and many more are ably reviewed by Kent, Ch. Justice; and he concludes an eloquent opinion by saying that, "whenever we subject the established courts of the land *to the degradation of private prosecution, we subdue their independence, and destroy their authority. Instead of being venerable before the public, they become contemptable; and we thereby embolden the licentious to trample upon every thing sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty." When the same case was decided in the court for the correction

[*184]

of errors, the prevailing opinion was delivered by Mr. Senator Platt, who concurred generally in the views expressed by the justice, and relied principally upon the same authorities. The argument on the other side admitted the inviolability of judges, whether superior or inferior, so long as they acted within their jurisdiction. There are other cases in this court recognizing the general doctrine. In *M'Dowell* v. *Van Deusen*, (12 John. 356,) the court lay down this proposition: " It is a general principle that a judge cannot be excepted to or challenged for corruption ; but must be punished by indictment or impeachment." They cite 1 Inst. 294, and 2 Inst. 422.

ALBANY,
Feb. 1828.
Cunningham
v.
Bucklin.

In the case now under consideration, it cannot be successfully contended that the defendant is a judge of record. He is a commissioner, not clothed with any general judicial authority; not vested with power to fine and imprison ; but specially authorized to do certain acts under certain circumstances. Within his jurisdiction, he acts judicially. He is a commissioner to perform certain duties of a judge of the supreme court ; but judges of the supreme court, as such, have no authority to discharge insolvent debtors. That power is conferred upon them severally by the same statute which gives a similar authority to commissioners. When judges act under the insolvent law, they act, not as judges, but as commissioners, clothed with the same powers, and subject to the same liabilities as all other commissioners. In some things they act judicially ; and while they so act, are not responsible for any error of judgment, if they are for wilful misconduct. On this point there are some decisions both in the English courts and in our own. *Ashby* v. *White*, (2 Ld. Ray. 938,) *is a leading case in the class of actions brought against persons clothed with a special authority. The ultimate determination in that case was, that a person, entitled to vote at an election for members of parliament, might prosecute for an obstruction of that right ; and, for any thing to be collected from the opinion of Ch. J. Holt, the motives of the defendant were not considered material, though from the declaration it appears that the refusal of the plaintiff's vote is charged

[*185]

ALBANY,
Feb. 1828.

Cunningham
v.
Bucklin.

to have been done *malitiose*. In *Drewe* v. *Coulton*, (1 East 563, *note*(a,) before Wilson, justice, the action was for refus‑ ing the plaintiff's vote. Wilson, justice, said, " This is, in the nature of it, an action for misbehavior by a public offi‑ cer in his duty. Now I think it cannot be called a misbe havior unless maliciously and wilfully done, and that the action will not lie for a mistake in law;" " and by wilful, I understand contrary to a man's own conviction." And he held the want of malice a full defence. In *Jenkins* v. *Wald‑ ron*, (11John. 114,) this court recognized the same principle, and applied it to a similar case. They held that no action lay against the inspectors of a popular election, for refus‑ ing the plaintiff's vote without malice. Spencer, J., in delivering the opinion of the court, says, " It would, in our opinion, be opposed to all the principles of law, justice and sound policy, to hold, that officers called upon to exer‑ cise their deliberative judgments, are answerable for a mis‑ take in law, either civilly or criminally, when their motives are pure and untainted with fraud or malice."

In the case of *Mather* v. *Hood*, (8 John. 50,) this court held, that a justice was justified, while acting within his jurisdiction, under the statute to prevent forcible entries and detainers. They say the decisions are uniform, that the record is not traversable, because the justice, in making it, acts not as a minister, but as a judge; and, according to settled principles of law, a record of such proceedings, which is regular and correct upon the face of it, cannot be questioned or traversed in a collateral action. It is a full and complete bar to any suit against the magistrate.

[*186]

*The case of *Bigelow* v. *Stearns* (19 John. 39,) was an action against the justice of the peace for false imprison‑ ment. The plaintiff had been committed to jail upon con‑ viction before the defendant as a magistrate, of an offence against the act for suppressing immorality. The defend‑ ant justified by producing the record of conviction of the plaintiff, who then offered to show that he was not brought into court before the justice previous to conviction. This was objected to, but admitted. Spencer, Ch. J., who de‑ livered the opinion of the court, held, that the conviction

was a complete justification to the defendant as to any thing set forth in it, unless he had exceeded his jurisdiction, or had not jurisdiction of the person of the plaintiff. He says, "If a court of limited jurisdiction issues process which is illegal, and not merely erroneous; or if a court, whether of limited jurisdiction or not, undertakes to hold cognizance of a cause without having gained jurisdiction of the person by having him before them in the manner required by law, the proceedings are void; and, in the case of a limited or special jurisdiction, the magistrate, attempting to enforce a proceeding founded on any judgment, sentence or conviction, in such a case becomes a trespasser." He then refers to the decision in *Mather* v. *Hood*, where conviction was held conclusive; but says, neither that case, nor any other, sanctions the doctrine that the want of jurisdiction of the person may not be shown, to avoid a conviction before a magistrate.

The statute under which the commissioner acted, contains this clause: "which discharge, or the record thereof, shall be sufficient authority to the sheriff or jailer for discharging such prisoner : and shall be conclusive evidence in all courts within this state, of the facts therein contained," &c. In the case of *Mather* v. *Hood*, the court held the record of conviction conclusive, and not traversable, when it shows that the justice had jurisdiction, and that he proceeded regularly. The statute does not make the discharge a record until the proceedings shall be filed with the county clerk; but it makes the discharge itself, or the record of it, conclusive evidence of the facts contained *in it. A record is also conclusive evidence of the facts contained in it. The discharge, then, is of the same authority as a record. Both are conclusive evidence of the facts set forth in them; and if conclusive, then no evidence can be given to contradict or impeach them. In *Mather* v. *Hood*, the plaintiff offered to show that the important fact stated in the record, viz., that the party convicted held the premises forcibly, was untrue; but the court would not listen to the testimony. If this case had gone down to trial upon the general issue, and the discharge had been produced in evidence under a

ALBANY,
Feb. 1828.

Cunningham ·
v.
Bucklin.

[*187]

notice, as it might have been, and the plaintiff had then offered to prove the facts upon which he now relies, to wit, that the commissioner, on the 9th of December, adjourned the proceedings to the 11th, and then refused the application, the case would have been in all respects parallel to the case of *Mather* v. *Hood.* Such evidence could not have been received.

If the discharge could not be contradicted in evidence, neither should it be in pleading.

There is no question arising here, as to jurisdiction. The commissioner had, by statute, jurisdiction of the subject matter. By the petition and oath of Shepherd, he acquired jurisdiction of his person. The subsequent proceedings, if irregular, are voidable; but not void. They may be reversed on certiorari; but while they remain matter of record, and conclusive evidence, the facts stated in the discharge cannot be controverted. They, of course, furnish a perfect protection to the officer. (See 3 Cowen, 209.) Whether it was wise in the legislature to put it in the power of officers thus to protect themselves, by making their records correct in form, though contrary to the truth, is not a question for our consideration. They undoubtedly knew that if the proceedings of officers acting under a limited and special jurisdiction, should be erroneous, they might be reversed on certiorari; and that if, upon certiorari brought, the officers, to support their erroneous proceedings, should make a false return, they would be personally responsible to the party injured. *Subject to this remedy, they seem occasionally to have thought it proper, in relation to delicate and important trusts, though to be executed summarily, and by single magistrates, to throw around them the shield of judicial irresponsibility. Seeing this established in relation to certain common law magistrates, should remove doubt, if there be any, as to the conclusiveness of this discharge, though that conclusiveness depends upon statute. It is not a strange or anomalous doctrine. I have supposed it established at common law. We have seen how strongly it is supported. No case has been produced showing that a judge of a court of record

has ever been held responsible in a civil action, even for misconduct in office. HOLT, Ch. J., says, they have been laid by the heels, and compelled to ask the king's pardon; by which, I understand, they were removed from office. Indeed, the same reasons operate, in some measure, to protect them against all suits, whether arising from their errors or their crimes. If an action were to lie at all, it would be easy for every person dissatisfied with the decision of the court, (and one party is always dissatisfied,) to allege corruption; and thus to harrass the judges, whose time and property, if they happen to have any, would be wasted in defending suits, which, if not founded in, might be supported by corruption. Hard, indeed, would be the condition of a judge, if he were thus exposed to never ending litigation.

But I forbear to pursue this subject. It is enough, in the case before us, that the statute has made the commissioner's own act, not only evidence, but conclusive evidence of his proceedings. It is not to be contradicted. While the discharge, therefore, remains in force, we must look into that, and no where else, for a correct history.

The defendant is entitled to judgment on the demurrer.

Judgment for the defendant.

*Lee* against GLOVER.                              [*189]

ON demurrer to the replication. The declaration was on a covenant of seisin in land. Plea, setting forth the defendant's title, the first link in which was a patent from the people of this state, dated January 29th, 1791, to Lieut. Nicholas Kaghnatshou, an Indian, for his military services as such lieutenant during the revolutionary war, in fee, whereby (the plea averred) he became seised, &c.; and being so seised, November 3rd, 1791, conveyed by deed to one Van Slyck, in fee, &c., deducing the defendant's title through several mesne conveyances. Replication, that Kaghnatshou, at the time when he conveyed to Van Slyck,

*Margin note:* The conveyance by an Indian resident in this state, of his land by deed to a white person, is void, whether he reside, at the time, with his tribe or not. Being void, no act of disaffirmance is necessary to render it unavailable to the grantee.

The case is not altered by the Indian deriving his title by patent from the people.