## SUPREME COURT.

### FURMAN and others agt. DAVID WALTER.

### R. & H. DART agt. SAME.

The difference between *applications for attachments* against non-resident debtors, under the *Revised Statutes* and under the *act of* 1831, and under the *Code*, is this:—

The Revised Statutes require that the application for the attachment shall state

Furman and others agt. Walter, &c.

the *grounds* upon which it is founded; and that the *facts and circumstances* to establish such grounds shall be verified by the affidavits of two witnesses.

The *act of* 1831 requires that the plaintiff shall, by his own affidavit, or that of some other person, prove, to the satisfaction of the justice, the *facts and circumstances* to entitle him to the attachment.

The *Code* (§ 229) declares, that the attachment may be issued whenever it shall appear by affidavit that a cause of action exists against the defendant, specifying the amount of the claim, and the grounds thereof, and that the defendant is either a foreign corporation or not a resident of the state, or has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with the like intent.

The attachments issued under the Revised Statutes, and the act of 1831, are *special proceedings*—are the *original process* by which suits are commenced; and a strict compliance with the requirements of the acts under which the proceedings are had, is necessary to confer *jurisdiction;* and one of these requirements is, that the *affidavits* must state the *facts and circumstances* to establish the grounds of the application for the attachment.

As the *jurisdiction* of the court or officers, in cases under the Revised Statutes and act of 1831, depends upon the *facts set up in the affidavits,* the *sufficiency* of such *affidavits* is necessarily a jurisdictional question; and if the affidavits fail to state facts necessary to confer jurisdiction, the defect cannot be supplied, either by an *amendment* or *supplemental affidavits.*

An attachment under the Code is not original process, and by it a suit is not commenced, nor upon it alone can a judgment be obtained; but it is a *provisional remedy* adopted in a suit already commenced.

The Code omits the requirements found in the Revised Statutes, and act of 1831, that the *facts and circumstances* to establish the grounds of the application shall be stated in the affidavits on which the attachment is applied for. It would seem, from its peculiar language, that if the facts of the existence of the cause of action, and that the defendant is either a non-resident of the state, or has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, &c., can be made to appear by positive allegations in the affidavit, the affidavit will be sufficient, although it omits to specify the particular facts and circumstances, which tend to establish the fact of non-residence, or departure from the state with intent to defraud creditors, &c.

*It seems*, that an affidavit for an attachment, stating positively in the words of the Code, the single fact that the defendant had departed from the state with intent to defraud his creditors, or had departed from the state, standing alone, unaided by any other fact or circumstance, is not any legal evidence of a departure from the state with intent to defraud creditors.

If, however, the affidavits show enough to call upon the officer to exercise his judgment upon the weight of the evidence in establishing the grounds of the application, the affidavits, on a motion to set aside the attachment for irregularity, will be held sufficient.

Upon the weight of authority, the true construction of the Code, and the estab-
lished principles of law, the court or a judge have the power and authority,
and it is their duty, on a special motion to set aside an attachment issued
under the Code, to receive as well *counter affidavits* on the part of the de-
fendant, to disprove the facts set forth in the affidavits on which the attach-
ment was founded, as *supplemental affidavits* on the part of the plaintiff in
support of the attachment.

It would seem, also, that the attachment and original affidavits, being proceed-
ings in an action, come within the 173d section of the Code, which authorizes
the court, in furtherance of justice, to amend any pleading or proceeding by
inserting material allegations therein.

Where it appeared that the attachment was served only on a stock of goods in a
store, which had been previously sold by the defendant to his clerk, (the lat-
ter being in possession,) *held*, that the defendant had no longer any interest in
such goods, and could not, therefore, be injured by their seizure under the
attachment. He could not, therefore, move to set aside the attachment.

*Montgomery Special Term, June, 1856.*

MOTIONS by the defendant to set aside attachments issued in
these actions.

The affidavits on which the attachment in the first above ac-
tion was granted, were those of the plaintiff Furman, and of the
deputy sheriff J. T. Easton. Easton stated, in his affidavit,
that he had a conversation with the defendant about the first of
April, 1856, in which the defendant told him that he was going
to Kansas, which deponent believed to be true; that the de-
fendant had not been seen since the night of such conversation,
in the village of Canajoharie, where he resided; and that he
(Easton) had no doubt that the defendant had gone to Kansas,
and left said county and state.

Furman, in his affidavit, after stating the cause of action, &c.,
being for goods sold to defendant, and that there remained due
to the plaintiffs $1,459.30, stated that he visited Canajoharie
on the 19th April, 1856, and upon information which he be-
lieved true, that the defendant had left said village, and was not
to be found; that a summons had been issued in said action,
and that the defendant had departed from the state with intent
to defraud his creditors, or to avoid the service of process, or
kept himself concealed therein with the like intent.

The attachment in the second above mentioned action was

issued upon similar affidavits. Both actions were commenced by the publication of the summons, as required by the Code. It appeared by the affidavit of the attorney who appeared for the defendant on these motions, that the sheriff, under the attachments issued in these actions, seized a stock of goods in the village of Canajoharie; and it does not appear that he had attached any other property. It appears, by the affidavits on which the attachments were granted, that the demands of the plaintiffs in each action arose out of goods sold to the defendant between the 20th of November, 1855, and the 11th of April, 1856.

The motions are founded on the attachments, and on the affidavits on which they were granted, and on the affidavits of the defendant and his attorney, stating, among other things, that the sheriff had attached, by virtue of said attachments, a stock of goods in said village.

In opposition to the motions, the plaintiffs read affidavits, in which it was stated that no notice of appearance in said actions had been served on the plaintiffs, on behalf of the defendant; and that the defendant, previous to the issuing of the attachments, kept a store in the village of Canajoharie; that on the 8th of March, 1856, by a bill of sale, he sold the stock of goods in said store, seized on such attachments, to William D. Hoff, his clerk, wholly on credit, for about $3,000; that said Hoff had commenced an action against the sheriff for attaching said goods under said attachments, and had caused the said goods, upon executing the undertaking required by the Code, to be restored to his possession; that on the 8th of March, 1856, the defendant was indebted to the plaintiffs and others in the city of New-York in a sum of about $4,000, and was insolvent; that between the 1st and 15th of March, 1856, the defendant settled nearly all his accounts on his books, and received payments or notes for the same; that previous to the issuing of said attachments, inquiry was made of said Hoff as to where the defendant was; that Hoff replied, he had gone off, and he did not know where he had gone, or when he would return, if at all; that defendant did not tell him, when he went away,

where he was going; that Hoff, at this conversation, claimed that he purchased the goods, and had paid for them, in part, in money, and for the balance had given his notes, and that said Hoff refused to state the amount he had paid in money, or the amount he had agreed to pay for the goods, or to show his bill of sale.

A. H. AYRES, *for defendant.*
A. HEES, *for plaintiffs.*

PAIGE, Justice. On these motions three questions arise. 1st. Whether the original affidavits on which the attachments were issued, are sufficient to sustain them? 2d. Whether the plaintiffs can, on these motions, read supplemental affidavits in support of such attachments, or move to amend the original affidavits by supplying the defects therein? And, 3d. Whether the defendant, having parted with all interest in the property attached, is at liberty to make a motion to set aside the attachment?

1st. Are the original affidavits sufficient to sustain the attachments? The attachments were issued under §§ 227, 228 and 229 *of the Code, and in actions previously commenced and pending in this court.* They are distinguishable from the attachments authorized to be issued under the provisions of the Revised Statutes, and the act of 1831, to abolish imprisonment for debt, &c. (2 *R. S.* 230, §§ 26, 28, 1 *ed.*; *Act of* 1831, *p.* 404, §§ 34, 35; *amended by act of* 1842, *ch.* 107, *p.* 74; 2 *R. S.* 2 & 3, 1 *ed.*)

The attachments issued under the Revised Statutes, &c., are special proceedings; are the original process by which suits are commenced; and a strict compliance with all the requirements of the acts under which the proceedings are had, is necessary to confer jurisdiction; and one of these requirements is, that the affidavits must state the facts and circumstances to establish the grounds of the application for the attachment. (7 *Hill*, 187; 4 *id.* 548; 21 *Wend.* 672; 7 *Barb.* 182; 18 *Wend.* 611; 2 *id.* 298; 21 *id.* 310; 4 *Denio*, 118; 3 *Com.* 41.)

An attachment under the Code is not original process, and by it a suit is not commenced, nor upon it alone can a judgment be obtained; but it is a provisional remedy adopted in a suit already commenced. (*Code*, §§ 99, 227 ; *Cole*agt. *Kerr*, 2 *Sand.* 661 ; 12 *Barb.* 265.)

It is in consequence of this distinction that it has been held, in several cases, that the sufficiency of the affidavits on which the attachment under the Code issues, is not a jurisdictional question. (12 *Barb.* 265, 273, 282; 3 *Sand.* 703 ; 10 *How. Pr. R.* 6.) The contrary rule prevails in relation to attachments under the Revised Statutes and the act of 1831.

As the jurisdiction of the court or officer, in cases under the Revised Statutes and act of 1831, depends upon the facts set up in the affidavits, the sufficiency of such affidavits is necessarily a jurisdictional question ; and if the affidavits fail to state facts necessary to confer jurisdiction, the defect cannot be supplied, either by an amendment or supplemental affidavits.

The Code differs materially from the Revised Statutes, (*pp.* 230, 232, 233, 1 *ed.*) and the act of 1831, (*p.* 404,) in its requirements in relation to the contents of the original affidavits, on which the attachments are issued. The Revised Statutes require that the application for the attachment shall state the grounds upon which it is founded; and that the facts and circumstances to establish such grounds shall be verified by the affidavits of two witnesses; and the act of 1831 requires that the plaintiff shall, by his own affidavit, or that of some other person, prove, to the satisfaction of the justice, the facts and circumstances to entitle him to the attachment. The Code (§ 229) declares that the attachment may be issued whenever it shall appear by affidavit that a cause of action exists against the defendant, specifying the amount of the claim and the grounds thereof, and that the defendant is, &c., not a resident of the state, or has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with the like intent.

The Code omits the requirement found in the Revised Statutes and in the act of 1831, that the facts and circumstances to

establish the grounds of the application shall be stated in the affidavits on which the attachment is applied for. It is sufficient, under the Code, if it appear by affidavit that a cause of action exists against the defendant, &c., and that he is a nonresident of the state, or has departed therefrom with intent to defraud his creditors, &c. If these specific facts, which are the grounds of the application, are made to appear by affidavit, to the officer who issues the warrant of attachment, the attachment is regular, although the facts and circumstances to establish such grounds may not be stated at length in the affidavit; in other words, it would seem, from the peculiar language of the Code, that if the facts of the existence of the cause of action, and that the defendant is either a non-resident of the state, or has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, &c., can be made to appear by positive allegations in the affidavit; the affidavit will be sufficient, although it omits to specify the particular facts and circumstances, which tend to establish the fact of non-residence, or departure from the state with intent to defraud creditors, &c.

In the actions in which the present motions are made, the original affidavits, verified on the 19th of April and 1st of May, 1856, by J. T. Easton, and by one of the plaintiffs in each action, state in positive terms that a cause of action exists against the defendant, &c.; that the defendant declared to the witness Easton, about the 1st of April, 1856, that he was going to Kansas, and that he had not been seen since the night he made such declaration; and this witness further states, that he had no doubt the defendant had gone to Kansas, and had left the state; and the plaintiffs state, in their affidavits, that a summons had been issued in the actions, and that the defendant had departed from the state with intent to defraud his creditors, or to avoid the service of process, or kept himself concealed therein with the like intent.

These affidavits may be construed as stating positively on the declaration of the defendant, in connection with the fact that the defendant had not been seen since the declaration. that the

defendant had departed from the state; and at least on belief, (although the statement is in positive terms,) that he had departed from the state with intent to defraud his creditors, or to avoid the service of a summons. The general term of this district decided, in *Fulton* agt. *Heaton*, (1 *Barb.* 552,) that a similar affidavit was sufficient to authorize an attachment under the provisions of the Revised Statutes in relation to justices' courts. (2 *R. S.* 230, §§ 26, 28—*as amended by the act of* 1831, *p.* 404, §§ 34, 35—*which act was amended by act of* 1842, *p.* 74.)

It was held in that case upon the authority of *Johnson* agt. *Moss*, (20 *Wend.* 145,) *Smith* agt. *Weed*, (*id.* 184,) and *Smith* agt. *Luce*, (14 *id.* 237,) that an affidavit was good, although the applicant swears only to his belief as to the intent to defraud, provided he sets forth, on his positive oath, the facts and circumstances on which such belief is founded. (*See* 2 *Wend.* 298; 18 *id.* 614.)

In cases arising under the Revised Statutes, if enough is proved to call upon the officer for the exercise of his judgment upon the weight and importance of the evidence; and if he errs in the decision of a question thus fairly presented, the error would not be fatal to the proceedings. It is only when there is a total want of evidence upon some essential point that the officer will fail to acquire jurisdiction. (4 *Hill*, 602; 20 *Wend.* 77.) It may, perhaps, be objected, in the cases under consideration, as was done in *Frost* agt. *Willard*, (9 *Barb.* 445, 446,) that an affidavit, stating positively, in the words of the Code, that the defendant had departed from the state with intent to defraud his creditors, was insufficient, as the intent of the debtor could not be known to the witness; and hence the necessity may be urged of stating the facts and circumstances which tend to show such intent. (21 *Wend.* 672.)

There is, undoubtedly, force in this objection. And it may also be objected that the single fact of the defendant's departure from the state, which may be regarded as positively sworn to, is not, standing alone, unaided by any other fact or circumstance, any legal evidence of a departure from the state with intent to defraud creditors. The Code declares that the exist-

Furman and others agt. Walter, &c.

ence of the facts—all the facts—necessary to authorize the issuing of a warrant of attachment, must appear by affidavit.

If, however, the affidavits in these cases show enough to call upon the officer to exercise his judgment upon the weight of the evidence in establishing the grounds of the application, the affidavits, on a motion to set aside the attachments for irregularity, will be held sufficient.

Nevertheless, as the sufficiency of the original affidavits in these cases may be questioned, I will proceed to discuss the *second question*, viz. : Whether the plaintiffs can, on these motions, read supplemental affidavits in support of the attachments ; or move to amend the original affidavits by supplying the defects therein ?

The application of the defendant is, to set aside the attachments as irregularly issued, upon the ground of the insufficiency of the affidavits on which they were founded.

Upon the question whether, on such applications, new affidavits can be read in support of the attachments, the decisions have been conflicting.

In *Conklin, &c.*, agt. *Dutcher*, (5 *How. Pr. R.* 386—decided in *July*, 1850,) it was held, by the general term of the sixth district, that on motions to set aside attachments issued under the Code, neither affidavits on the part of the defendant, disproving the facts set forth in the affidavits on which the attachments were granted, nor additional affidavits in their support on the part of the plaintiff, could be read. It was further held in that case, that the warrant of attachment, signed by the judge, or his allowance indorsed thereon, was an order ; and that the remedy of the defendant was by an appeal to the general term, under § 349 of the Code, or by application to the judge to vacate the order ; or, in case of irregularity, to a special term to set aside the attachment. This decision was followed by Judge HARRIS, in *Bank of Lansingburgh* agt. *M'Kie*, and in *White* agt. *Featherstonaugh*, decided in December, 1851, and December, 1852. (7 *How. Pr. R.* 357, 360.) An argument was used to sustain these decisions—that if it had been the intention of the legislature that new affidavits might be read by either party

on a motion to set aside an attachment, it is to be presumed that such intention would have been expressed, as it was in the case of an order for arrest, and an order of injunction. (*Code,* §§ 204, 205, 225, 226.)

The decisions in these cases are opposed by those in *Morgan* agt. *Avery,* (7 *Barb.* 656,) *Genin* agt. *Tompkins,* (12 *Barb.* 265, 282,) *Bank of Commerce* agt. *The R. & W. R. R. Co.* (10 *How. Prac. Rep.* 6,) *The New-York and Erie Bank* agt. *Codd,* (11 *How. Pr. R.* 221,) and in *St. Arnoux* agt. *De Beixcedon,* (3 *Sand.* 703.) In *Morgan* agt. *Avery,* (*decided in January,* 1850,) a case at special term before Judge EDMONDS, which was a motion to set aside two attachments, it was held that affidavits on the part of the plaintiffs might be received as well in answer to those on the part of the defendant, as in support of the original application for the attachments. A like decision was made in *Genin* agt. *Tompkins,* by the general term of the first district, in December, 1851. In this case, it was expressly held, that if there was any insufficiency in the original affidavits the defect might be supplied by supplemental affidavits. (12 *Barb.* 282—*per* KING, *J.*)

The same principle, viz., that new affidavits might be used on both sides, on a motion to set aside an attachment, was advanced by Judge HAND in *Bank of Commerce* agt. *The R. & W. R. R. Co.* (10 *How. Pr. R.* 6—*June,* 1854.) In the *New-York and Erie Bank* agt. *Codd,* (11 *id.* 221,) the general term of the 8th district, in May, 1855, decided that, on a motion before the judge who issued the attachment to vacate the same, both parties might read affidavits in support of and in opposition to the motion : and that on an appeal to the general term from the order of the judge at chambers, the court will not be confined to the question whether the original affidavits were sufficient, but will review the decision of the officer on the merits.

In *St. Arnoux* agt. *De Beixcedon,* (3 *Sand.* 703,) the superior court of the city of New-York held, expressly, that on a motion to set aside an attachment, the plaintiff might read supplemental affidavits in support of those upon which the attachment was issued.

From this review of the cases, it is apparent that the weight
of authority is decidedly in favor of the admissibility of counter-
affidavits on the part of the defendant, on a motion to set aside
or vacate an attachment; and also of supplemental affidavits
on the part of the plaintiff for the purpose of sustaining the
attachment. This proposition, in my judgment, is authorized
by the true construction of the Code, and by established princi-
ples of law. The attachment under the Code is not original
process; by it the action is not commenced; but it is *mesne*
process issued during the progress of an action, in which the
court has already acquired jurisdiction, both of the subject mat-
ter of the action and of the person of the defendant, by the pre-
vious personal service of a summons; or by its delivery to the
sheriff with the intent that it shall be actually served. (*Code,*
§ 99.)

It is not like the cases of attachments under the Revised
Statutes, a special proceeding, or original process, where a
strict compliance with all the requirements of law are neces-
sary to confer jurisdiction. Jurisdiction having already been
acquired in the action, no jurisdictional question can arise out
of the issuing of an attachment under the Code, or the affidavits
on which it is founded. Where a court has once acquired juris-
diction, its proceedings cannot be rendered void by any subse-
quent error or irregularity; they may be reversible, but, until
reversed, they are valid in respect to everybody. (6 *Barb.* 624;
8 *Cow.* 178, 187; 2 *C. & H. Notes,* 978, 989; 3 *Den.* 168.)

A court having once acquired jurisdiction in an action of both
the subject matter and person of the defendant, it possesses an
inherent power to control and regulate the subsequent proceed-
ings, and all process which may be issued during the progress
of the suit.

The attachment under the Code is a remedial process of great
value to creditors, and of great importance to debtors, as under
it their whole property may be attached and kept as security
for the plaintiff's demand at the commencement of the litiga-
tion. It is essential to a fair administration of justice, that a
process so important and potential should be under the control

Furman and others agt. Walter, &c.

of the court; to the end that the just benefits of it should be secured to the creditor, while it should not be allowed to be used as an engine to oppress the debtor. The control. over this process can be exercised by the court, according to its practice, by special motion. This power of control of the supreme court, being a court of general jurisdiction, is inherent in its character as a court, and does not depend upon any special statutory provision.

By virtue of this power, the court, on a special motion to set aside an attachment issued under the Code, or the judge who issued the attachment, on a motion to vacate the same, can unquestionably receive as well counter affidavits on the part of the defendant, to disprove the facts set forth in the affidavits on which the attachment was founded, as supplemental affidavits on the part of the plaintiff in support of the attachment.

It would seem, also, that the attachment and original affidavits, being proceedings in an action, come within the 173d section of the Code, which authorizes the court, in furtherance of justice, to amend any pleading or proceeding by inserting material allegations therein.

I have, therefore, concluded to receive the additional affidavits presented by the plaintiffs, on the hearing of the motions, in support of the attachments in question. These additional affidavits supply the defects in the original affidavits, and satisfactorily show that the defendant did depart from the state with intent to defraud his creditors, or to avoid the service of a summons.

I think, also, that as the attachments were served only on the stock of goods previously sold by the defendant to his clerk, Hoff, that the defendant has no longer any interest in such goods, and cannot therefore be injured by their seizure under the attachments. If he cannot sustain any injury growing out of the issuing of the attachments, he ought not to be permitted to make a motion to set them aside.

The motions to set aside the attachments must be denied, with $10 costs, to be paid in each action by the defendant to the respective plaintiffs in such actions.