## SUPREME COURT.

### UDOLPHO WOLFE agt. EMILE GOULARD.

When a person forms a *new word* to designate an article made by him, which has never been used before, he may obtain such a right to that name as to entitle him to the sole use of it as against others who attempt to use it for the sale of a similar article; but such an exclusive use can never be successfully claimed of words in common use previously, as applied to similar articles.

Words as used in *any language* cannot be appropriated by any one to his exclusive use to designate an article sold by him, similar to that for which they were previously used. That is, no person can acquire a right to the exclusive use of words, applied as the name of an article sold by him, if in their ordinary acceptation they designate the same or a similar article.

*Held*, that if the plaintiff, in this case, can eventually sustain his legal right, by action, to the use of the name of "Schiedam Schnapps," as applicable to a certain kind of gin alleged to be manufactured and sold by him, he may then obtain the relief by *injunction* he asks for; until then he is not entitled to it, as his right is expressly denied by the defendant.

*New-York Special Term, October,* 1859.

MOTION by defendant to dissolve injunction.

GILBERT DEAN, *for defendant.*

CHARLES O'CONOR, F. B. CUTTING, *and* H. E. DAVIES, JR., *for plaintiff.*

INGRAHAM, Justice. The plaintiff, in his complaint, avers that he has for a long time past been, and now is, the manufacturer and seller of a certain kind of gin, known as "Schiedam Schnapps," of the composition of which he is the original inventor, different from any other kind of gin, and superior to any other; that he first invented and adopted the term "Schiedam Schnapps," as a label, trade-mark or sign of the gin so sold by him, which previously was wholly unused, and never before known in the market as any designation for gin of any kind; that he has used the term "Schiedam Schnapps," as designating the article he sold, from 1848 to the present time, and claims the exclusive right to such name.

He also avers that he used a peculiar shaped bottle, and prepared a label, for which he obtained a copyright.

He charges the defendant with having imitated the bottle used by the plaintiff, with having adopted the term Schiedam Schnapps, and with using wrappers of the same color and resembling the plaintiff's. He charges the defendant with selling a spurious and inferior imitation of the article he sells, under the same name, except substituting the name of Voldner for Wolfe, but calling the article so sold by the same name, "Schiedam Schnapps," and he prays for a perpetual injunction.

An injunction was granted, restraining the defendant from selling any imitation of the plaintiff's gin, or any other article under the name of Schiedam Schnapps, and from the use of any imitations of plaintiff's labels, &c. The defendant now moves to dissolve this injunction.

In his answer, he denies the allegations in the plaintiff's complaint, but admits that for ten years past he has been selling common Holland gin, under the designation of Schiedam Schnapps, and has used square bottles, with a label such as were previously used by Burnett and Oldner, and which were sold by them as Voldner's Schiedam Schnapps. He avers that the article sold by Burnett and Oldner, and subsequently by himself, was a better article than Wolfe's, and denies that it was ever desired to have this article taken for, or confounded with that sold by Wolfe.

He also claims, that the gin he sells is manufactured in Schiedam; that the term schnapps is used there to represent an alcoholic drink, and was so used there, long before it was adopted by the plaintiff, and was so used in Schiedam long before the plaintiff was born.

Upon the argument of this motion, several affidavits have been produced on both sides, to sustain the views of the respective parties. Among them are a large number of affidavits on the part of the defendant, showing that the term Schiedam Schnapps had been in use at Schiedam, as applicable to liquors, long anterior to 1848; and a large number on the part of the plaintiff, showing that the term had never been applied to liquors sold in this market, or used as a designation of any kind of gin or liquor, until they were so used by plaintiff.

From the course of the argument before me, and the statements of the counsel, it was apparent that the main object of the action and of the injunction was to restrain the defendant from selling any article under the name of Schiedam Schnapps. The shape of the bottles was only used for the purpose of showing the intended imitation. It cannot be, that any person may not use square glass bottles, or colored wrappers, for the sale of an article of trade, whether previously used by another or not.

The labels offered in evidence cannot in any sense be said to be an imitation, either in color, name or contents, and as the plaintiff has a copyright of his label, if it should be used by others, he has an ample remedy in another proceeding.

The question then on this motion is limited to the sole inquiry whether the plaintiff has such a right to the use of the term "Schiedam Schnapps," to designate the liquor which he sells, as to entitle him to an injunction restraining the defendants from using it. It was admitted on the argument that the word "Schiedam," being the name of a town in Holland, could not be so appropriated by the plaintiff, and that the word "Schnapps" was a word adopted from the German language, meaning a dram. Both parties admit its use in Holland, with that signification.

The defendant also claims and produces some evidence to show that in Schiedam it is used to designate gin.

When a person forms a new word to designate an article made by him which has never been used before, he may obtain such a right to that name as to entitle him to the sole use of it as against others who attempt to use it for the sale of a similar article, but such an exclusive use can never be successfully claimed of words in common use previously, as applicable to similar articles. If the affidavits on the part of the defendant are correct, which state that the word Schnapps is used in Schiedam to designate gin, then the use of the words could not be restrained either there or here, any more than the use of the words New-York gin could be claimed by any one exclusively for gin manufactured in New-York. Words, as used in any language, cannot be appropriated by any one to his exclusive use to designate an article sold by him similar to that for which they were previously used. In *Burgess* agt. *Burgess* (17 *Eng. Law and Equity Reports*, 257), it was held that a person had a right to make and sell any article called "Essence of Anchovy," although the plaintiff and his father had for a long term of years been making and selling such an article under that name, originally invented by them; and that, too, when the sauce was sold in bottles of the same shape as the plaintiff used, with labels, wrappers and catalogues, bearing a general resemblance to those used by him. In the *Amoskeag Manufacturing Company* agt. *Speer* (2 *Sandf. S. C. Rep. p.* 599), Duer, Justice, says: "It is certain that the use by another manufacturer of the words or signs indicative only of these circumstances, *i. e.*, indicating the origin of the article, its appropriate name, the mode or process of its manufacture, &c., may yet have the effect of misleading the public as to the true origin of the goods, but it would be unreasonable to suppose that he is, therefore, precluded from using them as an expression of the facts which they really signify, and which may be just as true in relation to his goods as to those of another."

In *Stokes* agt. *Landgraff and others* (17 *Barb. S. C. Rep. p.* 608), this point was fully discussed by Strong, Justice. After

showing the cases in which he may by priority of appropriation obtain a right to the use of many letters, marks or symbols of any kind as a trade-mark, he adds:

"In respect to words, marks or devices, which do not denote the goods or property, or particular place of business of a person, but only the nature, kind or quality of the articles in which he deals, a different rule prevails. No property in such words, marks or devices can be acquired."

Mr. Justice DUER, in *Fettridge* agt. *Wells* (13 *How. Pr. Rep.* 355), says: "A name may rightfully be used as a trade-mark, but this is only true when the name is used merely as indicating the true origin or ownership of the article offered for sale, never where it is used to designate the article itself, and has become, by adoption and use, its proper appellation.

"The name, no matter when or by whom imposed, becomes by use its proper appellation. Hence, all who have an equal right to manufacture and sell the article have an equal right to designate and sell it by its appropriate name, &c., provided each person is careful to sell the article as prepared and manufactured by himself, and not by another."

The exclusive right, to use as a trade-mark the appropriate name of a manufactured article, exists only in those who have an exclusive right to the article itself. So it was held by Lord MANSFIELD in *Leighton* agt. *Bolton* (3 *Dow*, 293), that although the plaintiff had been selling a particular medicine, under the name of "Dr. Johnson's Yellow Ointment," yet the defendant had an equal right to prepare and sell it under the same name, there being no evidence to show that he sold it as prepared by the plaintiff.

In *Perry* agt. *Truffit* (6 *Beav.* 66), the plaintiff claimed to be the inventor of Perry's Medicated Mexican Balm, and applied for an injunction to restrain the defendant from selling a similar medicine, which he called Truffit's Medicated Mexican Balm, but the injunction was not granted.

In *Clark* agt. *Clark* (25 *Barb.* 75), Mr. Justice MITCHELL held, in the general term of this district, that a manufacturer might use the same word as another to designate his manufac-

ture, but must not use it so as to imitate an article previously sold by another.

In *Brooklyn White Lead Company* agt. *Maury* (25 *Barb.* 416), the court held that although the plaintiffs had sold their lead under the name of Brooklyn White Lead, for a long time, yet that the defendant might assume the same name to describe a similar article sold by him, and only restrained him from adding the word " Co." thereunto, as used by the plaintiffs; and in *Merrimack Manufacturing Co.* agt. *Garner* (4 *E. D. Smith's R.* 387), it was said, the defendants have a right to imitate and sell the same style of goods as those manufactured by the plaintiffs, and the plaintiffs have no ground of complaint, unless the label used upon the article in imitation would lead persons to suppose that they were buying goods actually manufactured by the plaintiffs.

From these cases and various others which might be cited, it is apparent that no person can acquire a right to the exclusive use of words, applied as the name of an article sold by them, if in their ordinary acceptation they designate the same or a similar article.

Upon the true meaning of this word in Holland there is con tradictory testimony. I do not deem it necessary upon this motion to decide it. Enough is shown at least to make it very doubtful whether the plaintiff can have any right to the exclusive use of this name. His right to it is expressly denied by the defendant, and when that is the case, an injunction is never granted in the first instance until the plaintiff has established his legal right to it by an action. (2 *Barb. Ch. R.* 101 ; *Mottey* agt. *Dounman,* 3 *Mylne & Craig,* 14.) If the plaintiff in this action establishes his right to this name exclusively he may then obtain the relief he asks for ; until then he is not entitled to the injunction.

I think, also, there is difficulty in sustaining this injunction for another reason. There is no pretence that the defendant ever sold his manufacture as that of Wolfe. On the contrary, he placed upon his bottles and labels, in large and plain characters, the name of Voldner as the manufacturer.

I am at a loss to see how he can be charged with selling it as an imitation of the plaintiff's article. The plaintiff's name is not used. The defendant sells under the name of a different person (whether real or fictitious is immaterial), so plainly that no one, who does not wish to be deceived, could for a moment suppose he was buying an article manufactured by Mr. Wolfe, as was said by BRUCE, F. J., in *Burgess* agt. *Burgess*. The ground of complaint is the great celebrity which the plaintiff's manufacture had obtained, and which might be affected. This does not give him an exclusive right, monopoly or privilege, so as to prevent any man from making the same article and selling it under his own name.

I deem it, however, unnecessary to discuss these questions any further, for the reason that, even if the plaintiff can eventually sustain his right to the use of this name, he is not entitled to the injunction under affidavits denying his right thereto, until he has obtained a judgment establishing such right to be beyond dispute.

The motion to dissolve the injunction is granted with $10 costs.