### GASHERIE a. APPLE.

*New York Superior Court; At Chambers, August,* 1861.

FRAUDULENT ASSIGNMENT.—ATTACHMENT AS PROVISIONAL REMEDY.—AFFIDAVITS TO SUSTAIN.[*]

The defendant may move to vacate an attachment, issued as a provisional remedy under the Code, as well after as before the assignment of his interest in the property attached.

On motion to vacate an attachment issued as a provisional remedy under the Code, founded on defendant's affidavit, the plaintiff will be allowed to make out his right to the attachment by supplementary affidavits.

---

[*] In DAVIS a. HACKLEY (*Supreme Court, First District; Special Term, April,* 1862), it was held by BARNARD, J., with the concurrence of the other justices, that, on a motion for an injunction, plaintiff might put in affidavits in contradiction or explanation of any new matter introduced by the defence; but that the defence might, during the proceedings, further answer the additional affidavits.

The action was brought to obtain an injunction restraining the comptroller of the city from paying, and the defendant Hackley, a contractor for cleaning the streets, from receiving, any moneys on account of cleaning the streets; and also for an appointment of a receiver, and an accounting on the part of the defendants holding the street-cleaning contract.

Gasherie *a*. Apple.

A debtor cannot use the power he has of assigning his property preferentially, to intimidate creditors into abstaining from pursuing the remedies allowed by law to collect debts, without being chargeable with intent to defraud them.

In equity, an insolvent debtor is trustee for his creditors, and he is bound to distribute his property among them, or allow them to collect their claims out of it. A change of the title to the property to a trustee may operate to obstruct the employment, by a creditor, of legal remedies against that property. The imposition upon that change of title of a trust, or condition, by which the share of each creditor in the assigned assets is made to depend on his leniency to the assignor, virtually retains power in the assignor's hands over the property for his own benefit, and therefore makes the assignment void.

Whatever purpose, which, if declared in writing and inserted in a general assignment of a debtor's property, renders it void as legally fraudulent, ought, when declared by the debtor, verbally, to be the object of an intended assignment, while holding possession of the property, to be considered as of an equally fraudulent character.

Where an attachment was issued as a provisional remedy under the Code, on the ground that the defendant was about to dispose of his property with intent to defraud creditors, such intent being manifested in a threat that if sued " he would make an assignment, and plaintiff could not get any thing, and he would do business under somebody else's name ;" and defendant in his affidavit, read on the motion to vacate the attachment, set forth that he had sufficient property to pay all his debts in full if his creditors had given him a little time ;— *Held*, that if the defendant was able to pay all his debts, his threat of making an assignment under which plaintiff would not get any thing, was evidence of an intention to defraud his creditors ; and that the language attributed to him manifested a purpose to dispose of his property with intent to defraud creditors, and to conceal his property or earnings from plaintiff's pursuit.

Motion to dissolve an attachment issued as a provisional remedy.

The action was brought to recover the sum of $2,268.65 for goods, suitable for use in the manufacture of shirts and draw-

---

*P. G. Clark*, *John E. Burrill*, *S. B. Garvin*, and *H. H. Anderson*, read the answers of the several defendants for whom they appeared, and some affidavits in opposition to the motion.

*Edwin James*, for the plaintiff, desired opportunity to produce affidavits in answer to the new matter which had been introduced.

*Mr. Burrill* and *James T. Brady*, opposed the request.

BARNARD, J., postponed the cause till the next day, saying, that he would consider the question in the mean time.

On the following day his honor stated, that in regard to the objection to the introduction of any further affidavits, he had conferred with the other justices of the district, and had concluded that it would be proper to permit the plaintiff to put in affidavits in contradiction to, or explanation of, any new matter introduced by the defence ; but that the defence would have the right also, at any time during the proceedings, to further answer the additional affidavits.

ers, sold and delivered to the defendant. The attachment was granted upon the affidavit of the plaintiff, as to the existence and amount of the debt, and upon the affidavit of Moses Will, a salesman for the plaintiff, which contained the following allegations:

"This deponent says, as he verily believes, the said defendant is about to dispose of his property, with intent to defraud his creditors. Deponent further says, that he has, within the past three or four weeks, several times applied to the defendant to pay or secure said debt; and he, on the 19th instant, promised the plaintiffs that he would take an account of his stock, and show them a statement of his affairs, and give them security on his stock the next day. He did not call the next day; and deponent, on July 22, 1861, went to said defendant, and he told deponent he was not going to take an account of stock or give any security; deponent then told him the plaintiffs would sue him, and he replied that if they did, he would make an assignment, and they could not get any thing, and he would do business under somebody else's name."

The attachment was levied upon the defendant's property; the defendant thereafter made a general assignment of his property, with preferences, on the 26th day of July. On the 30th of July he noticed the present motion to vacate the attachment, upon affidavits denying the use of the expressions detailed in Will's affidavit, and stating that defendant had sufficient property to pay all his debts in full, if his creditors had given him a little time. On the motion, the plaintiff offered affidavits that the defendant used the expressions referred to on another occasion.

*Solomon L. Hull*, for the motion.

*Charles H. Smith*, opposed.—I. The defendant having made a general assignment, cannot move to discharge the attachment. His interest in the property is gone.

II. Even if the affidavit on which the attachment issued is deemed rebutted, the affidavits now read show conclusively that at the time the attachment issued the defendant was about to dispose of his property, with intent to defraud his creditors. He has now done so in the assignment made after levy of the attachment.

ROBERTSON, J.—The objection that the defendants cannot move to discharge the attachment in this case, founded on the cases of Furman *a.* Walter (13 *How. Pr.*, 348) and Matter of Griswold (13 *Barb.*, 412), is overruled by the provisions of section 241 of the Code, that the defendant may in all cases move to discharge an attachment, as in case of other provisional remedies. Whether the plaintiff can use supplemental affidavits, not only to disprove matters in the defendants' affidavits, on which the motion is made, but also to justify the issuing of the attachment, is a question which has been differently decided by different tribunals. A distinction undoubtedly exists between attachments, which are separate special proceedings and not in any action, where the affidavits on which they are issued must show jurisdictional facts, and those, which are mere provisional remedies. That distinction is ably discussed and laid down in Furman *a.* Walter (*supra*), upon the strength of which distinction the court held, in the case of St. Amand *a.* De Beixcedon (3 *Sandf.*, 703), that an attachment might be sustained by affidavits supplying defects in the original affidavits.

The Supreme Court of this district has, it is true, held, in the case of Wilson *a.* Britton (6 *Abbotts' Pr.*, 33), followed by that of Dickinson *a.* Benham (10 *Ib.*, 390 ; 11 *Ib.*, 158), that no supplemental affidavits were admissible on the part of the plaintiff, except such as contradicted the statements contained in the defendant's ; but I consider the authority in St. Amand *a.* De Beixcedon as paramount in this court, even if it were not sustained by the reasoning in Furman *a.* Walter.

Although, therefore, it seems to be disproved, by the affidavits on behalf of the defendant, that he used the expressions contained in one of the affidavits on which the attachment was issued on the occasion therein mentioned, the new affidavit of the same witness, which is uncontradicted, shows that he used it on another occasion. This, therefore, renders necessary the examination of the question, whether such declaration is evidence of any fact which authorizes the issuing of an attachment.

The declaration in question resembles very much that discussed in Wilson *a.* Britton (26 *Barb.*, 562 ; 6 *Abbotts' Pr.*, 97), and that in Dickinson *a.* Benham (*supra*). In both these cases the declarations were held not to be evidence of a fraudulent intent, because the threat contained in them was only to do what

might be legal; but the effect of the condition accompanying it seems to have been overlooked in both cases, as affecting the question, to wit, in case of an action by the party threatened. Now it was conceded, in the case of Griffin a. Marquardt (21 N. Y., 121), that a declaration by an assignor, that he had made an assignment for the purpose of gaining time to pay his creditors, was admissible, although held not to be conclusive; the question arises, whether a debtor can use the power he has of assigning his property preferentially, to intimidate creditors into abstaining from pursuing the remedies allowed by law to collect debts, without being chargeable with an intent to defraud them.

The common law held that a debtor was bound to apply his property to paying his debts, as they became due; and a creditor was entitled to pursue his legal remedies unobstructed, for the purpose of enforcing that obligation; every obstacle interposed by the debtor to bar or delay such pursuit, was void. (Sands a. Hildreth, 14 *Johns.*, 493.)

The Statute of Frauds and Statutes of Bankruptcy were passed to carry out this principle, the latter both expediting the creditor's pursuit, converting the failing debtor's estate into a trust-fund, and releasing the honest debtor on surrender of his estate. The law allows a debtor to assign his property to pay his debts, and even to make preferences, but compels him to make his selection without any conditions for personal gain to himself; thus he cannot, by an assignment, hold out a hope of an extra share of his assets, or a fear of loss of any participation therein, as a means to induce a creditor to abandon all, or any part of his claim, or to forbear pursuing his legal remedies therefor.

The cases in our courts, beginning with Hyslop a. Clarke (14 *Johns.*, 458) and Searing a. Brinkerhoff (5 *Johns. Ch.*, 329), continuing with Austin a. Bell (20 *Johns.*, 442), and ending with Grover a. Wakeman (11 *Wend.*, 187), sustain the doctrine as to coercion into abandoning part of a claim, as Berry a. Riley (2 *Barb.*, 307) does in reference to compulsory abstinence from suing.

I am aware that a threat by a debtor, to assign his property if sued, is not only frequently practised, but is considered an innocent mode of coercing creditors into extending the time of paying their claim; but I am at a loss to understand any legal

principle of distinction, as proof of a fraudulent intent, between an admission that the object of an assignment executed was to gain time, as in Griffin *a.* Marquardt (*supra*), and a declaration that an assignment would be executed to defeat a remedy by action, in order to deter a creditor from bringing it.

In equity, an insolvent debtor is trustee for his creditors; and he is bound to distribute his property among them, or allow them to collect their claims out of it; a change of the title to the property to a trustee may operate to obstruct legal remedies against that property by any creditor, and therefore can only be employed for a legal purpose; the imposition upon that change of title of a trust or condition, by which the share of each creditor in the assigned assets is made to depend on his leniency to the assignor, virtually retains power in the assignor's hands over the property for his own benefit, and therefore makes the assignment altogether void. Whatever purpose, which, if declared in writing and inserted in the assignment renders it void as legally fraudulent, ought, when declared by the debtor verbally to be the object of an intended assignment while holding possession of the property, to be considered as of an equally fraudulent character. · The mere change of title, or reduction of the intent to writing, as a condition, could not impart any new fraud to the intent.

A threat, therefore, by a debtor to a creditor, to make an assignment so as to deprive the latter of all share of his estate if he commenced an action, appears, to me to be as much evidence of a fraudulent intent in fact, as the actual making of an assignment, with a like provision in it, is of a fraudulent intent in law.

Besides this, however, if the defendant's account of his assets is to be taken as correct, he could not legally assign his property so as to exclude the plaintiffs from any participation in it, as they exceed the amount of other claims against him; in fact, he states that he only wanted time to pay all his debts. In order, therefore, to prevent the plaintiffs from getting any thing, the intended assignment must have been fraudulent or an instrument of fraud; besides, the additional threat was made, of carrying on business in some one else's name, which can be only understood as intending to conceal the defendant's property or earnings from the plaintiffs' claim or pursuit.

The defendant may have honestly intended to have satisfied, when more convenient, the plaintiffs' claim, but he mistook his legal power over his own property, and his right to assign it to pay creditors, when he undertook to abuse that power of assigning it, by coercing a creditor into giving credit on a claim from fear of an assignment which should cut them off.

The motion to dissolve the attachment must therefore be denied, but without costs, as it is sustained only on the new affidavit.

---

## SCOTT *a*. WILLIAMS.

*Supreme Court, First District; At Chambers, December,* 1861.

ARREST FOR FRAUD IN CONTRACTING OBLIGATION.—EVIDENCE OF
CONTEMPORANEOUS FRAUDS.—REFEREE TO TAKE EVIDENCE.

Where the defendant upon affidavit moves to vacate an order of arrest, which was granted on the ground of fraud in contracting the obligation upon which the action is brought, evidence of other contemporaneous frauds committed by the defendant is admissible, from its tendency to sustain the original charge of fraud, and to determine to which of the parties, in case of conflicting affidavits, credence should be given.

A referee appointed to take evidence should take all that is offered, and leave it to the court, on the hearing of the matter, to determine what is not competent.

Motion to discharge an order of arrest.

This action was brought to recover the price of a quantity of goods sold. An order of arrest was obtained on the ground of fraud in contracting the obligation, and also in attempting to dispose of property to defraud creditors. The defendants moved to vacate the order of arrest, upon affidavits contradicting the affidavits upon which the order of arrest was issued. The evidence as to fraud was conflicting, whereupon a referee was appointed to take the testimony and report to the court, with his opinion thereon. Before the referee certain evidence was offered by the plaintiffs, tending to show contemporaneous frauds. The referee excluded this evidence, and reported, as his opinion, that the order of arrest should be discharged. On the coming in of