## Wilson and others *vs.* Britton.

A threat by a debtor, when proposing a compromise with creditors, that if they do not accept one-third of their debt, he will make an assignment of his property, and such creditors will not get any thing—that he will put his property out of his hands—is not necessarily a threat to make a *fraudulent* disposition of his property, so as to authorize the issuing of an attachment.

In the absence of any proof of a fraudulent intent, derived from contemporaneous or subsequent acts, the declaration will be construed as referring to a *legal* disposition of the debtor's property.

APPEAL from an order made at a special term, denying a motion to vacate an attachment. The affidavit of the plaintiff Wilson, upon which the attachment was granted, stated the indebtedness of the defendant to him, upon several promissory notes, and for goods sold and delivered; and alleged that on the 19th of December, 1857, the deponent called upon the defendant, at the city of New York, for payment; that the defendant said he would not pay the same; that he wished to make a compromise with his creditors at $33\frac{1}{3}$ per cent on the dollar, with the exception of confidential debts, and that if the deponent did not agree to take this, "he would go home and make an assignment of his property, and that the plaintiffs would not get any thing of their said claims, and that he would put his property out of his hands sooner than pay them more than $33\frac{1}{3}$ per cent of the amount of his debts;" and upon the deponent's firm refusing to take less than the amount of their claim, the defendant declared "he would go home and put his property out of his hands;" which the deponent verily believed the defendant was about to do, in order to defraud his creditors and the plaintiffs in this action. The facts stated in Wilson's affidavit were denied by the defendant.

*John Foot*, for the appellant.

*Jas. T. Brady*, for the plaintiffs.

Wilson *v.* Britton.

*By the Court,* CLERKE, J. I do not find, even in the affidavit presented on behalf of the plaintiffs, any thing to convince me that the defendant, in his conversation with the plaintiffs, on the occasion referred to in the plaintiffs' first affidavit, intimated any thing more than that he intended to make an assignment. If his declaration admits of this construction, merely, why should we infer that he intended fraud. This would be contrary to the benign principle that we are not to presume wrong until wrong is plainly indicated. Of course we are not obliged to confine our interpretation to mere words; but if we seek for his intent from any other source, it must be to give effect to his words. In this case the defendant's conduct by no means corresponds with the construction given to his conversation, referred to in the plaintiffs' affidavit. He attempted no fraudulent disposition of his property; but, subsequently, made a legal and valid assignment of his property for the benefit of his creditors. Does his language, set forth in the plaintiffs' affidavit, even supposing it to be reported correctly, fairly import any thing more than this? "He would go home and make an assignment of his property, and that the plaintiffs would not get any thing of their claims. He would put his property out of his hands." He stated how this was to be done—by making an assignment. This was no threat to make a fraudulent disposition of his property. On the contrary, it was a perfectly legal disposition of it—a disposition of it, also, entirely consistent with the fact that the result would be that the plaintiffs would not get any thing of their claims. For he may give preferences, which the law also allows; and by providing full payment to some creditors, nothing may be left out of the assets for others. We cannot, therefore, I think, sustain this attachment without presuming an evil intent, when the words employed admit of a different construction, and when no contemporaneous or subsequent acts are shown to give any other signification to them. The defendant, probably, meant by an emphatic representation of the course which

he intended to pursue, to induce the plaintiffs, and his other creditors, to compromise their claims, and to save him the necessity of making an assignment. But however strenuously he might have urged this upon their attention, it amounted to nothing more than that he was determined, if they did not compromise, to make an assignment. This was the whole substance of it; and we cannot pronounce this to be a threat to make a fraudulent disposition of his property; unless we are prepared to stigmatize that as fraudulent which the law expressly sanctions. Having arrived at this conclusion, it is unnecessary to consider the legal question submitted by the defendant's counsel.

The order appealed from should be reversed, with costs.

[NEW YORK GENERAL TERM, February 1, 1858. *Davies, Clerke* and *Sutherland,* Justices.]