## ALFRED H. HENRY *v.* EDMUND TILSON, JR.

In a case admitting of reasonable doubt as to the amount in dispute exceeding one hundred dollars, and where the plaintiff might have had reasonable ground of expectation of recovering more than that sum, the action will not be dismissed for want of original jurisdiction in the county court.

It is only in those cases where record proof is vouched as proof of a fact happening upon a certain day, that the date becomes descriptive of the record, and a variance consequently fatal. But where, in a collateral action, it is alleged that an arrest and commitment were made upon a certain day, and, on trial, the allegation is attempted to be proved by the return of the officer who made the arrest, and from that it appears that the arrest was made upon a different day, the variance can have no effect upon the plaintiff's right of recovery.

A declaration, in an action brought to recover the penalty given by statute for taking excessive and illegal fees, which specifies all the items of fees charged, and avers that the *excess* of fees therein charged was " a large sum, to wit, the sum of $4.00," might be bad upon demurrer, for not specifying the items of *illegal* fees taken, but is sufficient after verdict.

The history of the legislation, in the State, in reference to the subject matter of a particular statute, may be referred to, as tending to aid in the construction to be given to the statute.

Where the literal interpretation of a statute would lead to a gross absurdity of restriction, the court will extend its application to cases within the same equity, though at the expense of *forcing* the construction of the *words*.

Henry *v.* Tilson.

Under sect. 8 of chap. 107 of the Revised Statutes, *all officers,* who perform services for which no fee is specially allowed by statute, are entitled to charge therefor such sum as shall be in proportion to the fees established by law; the right to compensation for such service is not confined to clerks and recording officers merely.

. An officer, who receives illegal fees, is liable to the penalty imposed by sect. 16 of chap. 106 of the Revised Statutes, whether such fees are received for services for which a fixed compensation is given by law, or for services not specified in the fee bill, and for which compensation is allowed under sect. 8 of chap. 107 of the Revised Statutes.

But an officer, who receives illegal fees, is not liable to the penalty imposed by sec. 16 of chap. 106 of the Revised Statutes, *unless he received such illegal fees knowingly.* In this respect the sixteenth section must have the same construction with the fourteenth and fifteenth sections.

A constable, who commits a person to jail by virtue of a tax warrant, is only entitled to charge fees for actual travel, one way, in the commitment,— there being no return necessary.

But if the constable receive fees for travel from the place of commitment to the office of the treasurer, to whom he is required to pay the tax, when collected, he is entitled to prove, in an action brought against him to recover the penalty given by statute for receiving illegal fees, that it had been the usual practice of collectors of taxes to charge such fees.

A charge for the conveyance to jail of a prisoner, who is committed upon a tax warrant, or in a case of commitment for debt, is not ordinarily allowable,—that being included in the fee given to the officer for travel.

THIS was an action against the defendant, as constable and collector of the town of Braintree, brought to recover the penalty imposed by the Revised Statutes, chapter 106, section 16, for receiving illegal fees. The declaration was in four counts, in each of which it was averred that the defendant, as collector, held a tax bill,—on which was a tax against the plaintiff,—and a warrant thereto attached, and that, by virtue of the said warrant, the defendant, on the seventh day of May, 1843, arrested the plaintiff, and committed him to jail in Chelsea, in the county of Orange, and deposited with the keeper of the jail a copy of said warrant, on which he minuted his fees, as follows, viz.—Copy $0.75. Travel, 40 miles, $2.40. Conveyance $1.00. Key fee $0,34. Levying

$0.15. And it was avered that the plaintiff, in order to obtain his liberation from jail, was obliged to, and did, pay the amount of fees so minuted which amount was received by the defendant, and that the defendant received greater fees than were allowed to him by law, and that the excess so received by the plaintiff was " a large sum, to wit, the sum of four dollars." The penalties claimed amounted in the whole to $160.00. Plea, the general issue, and trial by jury.

On trial the plaintiff introduced testimony tending to prove that the defendant, as constable and collector of Braintree, committed the plaintiff to the jail in Orange County on the seventh day of April, 1843, on four tax warrants, and delivered to the jailer copies of the same, with the amount of the taxes against the plaintiff and of the defendant's fees for the commitment minuted thereon, as set forth in the plaintiff's declaration, and that the plaintiff, for the purpose of obtaining his discharge from the jail, paid said amount. It appeared that it was twenty miles from the place where the plaintiff was arrested by the defendant to the jail in Chelsea, and twenty miles from the said jail to the office of the Treasurer of the town of Braintree, and to the office of the Treasurer of the State,—to whom the taxes against the plaintiff, when collected, were to be paid by the plaintiff.

The defendant offered testimony, tending to prove that it had been the usual custom of collectors of taxes in Braintree to charge fees for travel, in such cases, from the place of service to the jail, and from thence to the Treasurer's office;—to the admission of which the plaintiff objected, and it was excluded by the court.

The defendant then moved the court to dismiss the action for want of jurisdiction;—which motion was overruled by the court.

The defendant requested the court to instruct the jury, that the plaintiff could not recover, for the reason that he alleged in his declaration that the arrest was made May 7, 1843, and the evidence showed that it was made April 7, 1843;—that the plaintiff could not recover, unless the jury were convinced that the defendant charged and received the fees, *knowing* them to be illegal;—and that the defendant might legally charge for travel, upon said warrants, from the place of arrest to the jail, and from the jail to the Treasurer's office, where the tax was to be paid, and a reasonable sum for carrying the defendant to jail.

The court refused to instruct the jury as requested, but did instruct them, that the plaintiff might recover, notwithstanding the proof did not correspond with the declaration in regard to the time of the arrest and commitment;—that, if the defendant charged fees which were illegal, the law will presume that he did it knowingly;—and that, as the law had not provided for charging for conveying the plaintiff to jail, the defendant had no right to charge any fee for that.

The jury returned a verdict for the plaintiff. The defendant then filed a motion in arrest of judgment for the insufficiency of the plaintiff's declaration; which motion was overruled by the court. Exceptions by defendant.

*L. B. Vilas* and *J. P. Kidder* for defendant.

1. The defendant ought to have been permitted to prove the *custom* of officers, in relation to charging fees on warrants for the collection of taxes. The warrant, upon its *face*, is not returnable; but in *fact* it is otherwise; for the officer must make known in some manner how he has disposed of the tax against the delinquent, and the only course for him to take, to exonerate himself from the payment of the tax, is to convey *that* knowledge of the disposition of the tax, or the delinquent, which he has made in the premises, to the proper authority of his town. The officer, in making out his bill of fees, followed the *general* statute,—charged from the place of arrest to the place of return,—the treasurer's office.

2. The plaintiff *well knew* that there were no more than twenty miles travel (if any) charged, that was illegal; also, that there was only one dollar, for conveyance, illegal; and certainly no more than twenty five cents on each copy which was illegal. The principle of law is well settled, that, if the plaintiff brings his action to the county court, without having good reason to believe that he shall recover more than $100, the county court has not jurisdiction.

3. The proof did not sustain the declaration. A party may, in pleading, make a point material unnecessarily; but, when made, he must abide the consequences. If the plaintiff counts upon a writing obligatory as bearing date on a certain day, and the instrument is dated on a different day, the variance will be fatal. The rule is the same, whenever the time stated in the pleadings on either side is to

Henry *v.* Tilson.

be proved by a record referred to in the pleadings. *McDaniels* v. *Bucklin,* 13 Vt. 279. Gould's Pl. 91–92 and cases there cited.

4. This is an action for a *penalty,* and a proceeding *criminaliter.* Full proof is required in criminal actions and in actions of a criminal nature. In the same chapter in the Revised Statutes, under which the plaintiff claims that the defendant is liable, sec. 14, it reads. "If any clerk of the county or supreme court, in taxing any bill of costs, shall *knowingly* include a greater sum than is provided for by law," &c.; also, sec. 15, "If any attorney or other person" &c. "shall *knowingly* make up, take and receive a greater sum," &c. We believe the doctrine is, to put a *liberal* construction on statutes; if so, how can we, consistently, make this defendant liable on the mere fact that he *took* illegal fees, when, upon a trial of a *clerk,* or *attorney,* the jury must be convinced he taxed and received the fees *knowing* the same to be illegal?

5. The request made to the court, to charge the jury that the defendant could legally charge travel from the place of arrest to the jail and from thence to the treasurer's office, and a reasonable sum for conveying defendant to jail, is within the spirit and meaning of the statute. Collectors of taxes are allowed to tax and collect like fees, as sheriffs are allowed for levying executions. Rev. St. 476. It has always been the custom for sheriffs to charge fees for conveyance, likened unto the rule to charge for securing property and taking an invoice of goods attached.

6. The declaration is insufficient. It is a settled rule, in actions on statutes, that every circumstance in the description of the offence, contained in the body of the clause that creates it, and gives the penalty, or forfeiture, must be set forth, so as to bring the defendant within the statute. *Ellis* v. *Hall,* 2 Aik. 41. Among other things, not sufficient in the plaintiff's declaration, is this,—that the excess received by the defendant of the plaintiff is described as a large sum, to wit, the sum of four dollars, &c. He ought to have mentioned *the item* of fees which was greater than provided for by law, so that we could meet it.

*E. Weston* for plaintiff.

1. The plaintiff contends, that the defendant had no right to charge for travel from the jail to the treasurer's office. The war-

rants required no return ; the service was completed at the jail, and the collectors should not charge for any except actual travel ;—and other collectors having so done does not make it lawful.

2. The charge for *conveyance* is illegal, not being provided for by law.

3. The law will presume that the illegal fees were taken *knowingly*.

4. There is no *variance* between the declaration and proof, relative to the *time* of the arrest. The time of the arrest is *immaterial*, and has nothing to do with the charging and receiving the illegal fees. The receiving the illegal fees was independant of the arrest, and was proved wholly by parol. It was not necessary to prove the arrest by the copies. The suit is not for arresting and imprisoning the plaintiff. The reciting the warrant and return in the writ is merely *inducement* and perhaps may be treated as *surplusage.* Gould's Pl. 88–91.

The opinion of the court was delivered by

REDFIELD, J. 1. The defendant moved to dismiss the action for want of original jurisdiction in the county court. We think the motion was correctly overruled. From the ultimate decision of this court it will be seen that the plaintiff might have had reasonable ground of expectation of recovering more than one hundred dollars. And we have long since adopted the rule of decision, in regard to conflicting jurisdiction between the county court and justices of the peace, not to turn the party out of the county court, in a case admitting of reasonable doubt as to the amount in dispute exceeding one hundred dollars. *Kittridge v. Rollins*, 12 Vt. 541.

2. We do not think the variance between the date of the return upon the warrant and the time of the arrest and commitment, as alleged in the plaintiff's declaration, is material. The process, not being returnable process, could not properly be vouched as proof of any fact ;—and it is only in those cases where record proof is vouched as proof of a fact happening upon a certain day, that the date becomes descriptive of the record, and a variance consequently fatal. The merely averring that a fact occurred upon a particular day, which *may* be proved by merely oral testimony, but which, on trial, is *in fact* proved by the written admission of the opposite party,

does not make the date of the admission material. If the declaration had alleged that the return *bore date the seventh day of May*, this would have been descriptive of the return,—but not when it is alleged that the arrest and commitment happened upon that day.

3. The declaration might have been defective, for not specifying the items of illegal fees taken by the defendant, and bad upon demurrer, but not on motion in arrest of judgment. After verdict all reasonable presumptions will be made in favor of the pleadings.

4. The main question in the case is one of importance, and upon which there have been no decisions of this court. The course of the history of legislation upon the subject will best interpret the statute now in force. Two questions seem to naturally arise here. 1. Whether any officer is entitled to demand fees for services performed, but for which there is no fee given in the statute? 2. If so, whether an officer exposes himself to the penalty for taking illegal' fees, by taking excessive fees for services not specified in the fee bill ; or only for that class of services, where a fixed compensation is given by law ?

Upon the first point, we refer to the history of legislation, as tending to elucidate it. There seem to have been fee bills enacted by the legislature almost every year from 1779 to 1783, but nothing from which we can infer whether any other fees, than those specified, were to be allowed to any-officer, until the latter year. In 1783 the enacting clause is as follows,—" That the fees to be taken by the several officers in this State, herein after mentioned, *so far as the same are particularly enumerated*, be as follows, viz." This same form is adopted in the Revision of 1787. From this phraseology we infer that the legislature intended to distinguish between " *enumerated* " and " *non-enumerated* " fees. In the Revision of 1798 the act establishing the fee bill expressly enacts, that a specified number of officers, among whom are sheriffs, which, as to fees, will include constables and collectors, and " all other persons, whose duty it may be to record any proceedings, or give any copies, attestations, or certificates, &c., shall be allowed seven cents for every hundred words, and for every other duty, or service, done, or performed, such sum as shall be in proportion to the fees specifically provided by this, or any other act, for such officers respectively." This same provision was virtually re-enacted in the

fee bill of 1821, and in the late Revised Statutes. It has long since received a practical construction, of giving *non-enumerated* fees to *all* persons, who are required, by law, to perform services, for which no fees are specifically fixed.

It is certainly difficult to conjecture any good ground, upon which a *general* allowance should be made to *certain* officers for *all* " duty, or service," where no specific fee is provided, and not extend the same provision to *all* officers. Such, certainly, has always been the practice under this, and similar statutes since; and the *form* of the present statute seems to justify such a construction. It is as follows,—" All officers and persons—whose duty it may be to record any proceedings, or give any copies, other than such for which fees shall be established by law, shall be allowed therefor seven cents for each folio—and for any other services performed, such sum as shall be in proportion to the fees established by law." I have adopted the *dash,* instead of the *comma,* in punctuation, which shows more clearly how the construction should be, and, indeed, *must* be, to avoid *partiality and absurdity.* For if we regard the provision as merely intended to give a *general compensation* for recording and certifying, the conclusion is wholly unnecessary, and, in *terms the most unequivocal,* extends to *all* " *other services performed.*" Why, then, the question arises, should *clerks* be paid for *all other* services, and not *every other officer, or person?* The question, I apprehend, is unanswerable, unless we conclude the legislature intended to discriminate in favor of recording and certifying officers, not only as to those acts, but all other acts performed,— which is too absurd to be entertained.

We conclude, then, that the present Revised Statutes do provide, that " All officers and persons shall be allowed for all other services, than such for which fees shall be established by law, performed [by them,] such sum as shall be in proportion to the fees established by law." This was doubtless the object, in enacting the eighth section of the 107th chapter, which has been cited above ;—but in regard to *records and copies* not enumerated, they wished to fix the compensation by the folio. In attempting to combine the two objects a form of expression was adopted, that seemed to exclude all other officers, except recording and certifying officers,— but not necessarily excluding them,—and the necessity of the case

*compels us* to *include* them, at the expense of *forcing* , the construc-
tion of the *words* of the act, in order to avoid so gross an absurdity
as the literal interpretation would lead us into.

2. If, then, by express provision of the statute, all officers are
entitled to compensation for all official services, by them performed,
when no fees are established by law, in proportion to those which
are established, the question arises, what are illegal fees ?—and how
are they to be taken ?    Does the mere act of *taking* subject the per-
son to the penalty ? or must it be done *knowingly, malo animo* ?
Here, too, there is some difference in the phraseology used in giving
the penalty against different officers, which, if interpreted literally,
would lead to a very absurd discrimination in favor of certain classes
of persons,—which is the last thing a legislature should be supposed
to intend, unless they have very clearly so expressed themselves.
" Equality is equity " in legislation, as well as every where else.
We shall present the sections referred to.    Sect. 14.  " If any clerk
of the county or supreme court, in taxing any bill of cost, shall
knowingly include a greater sum, than is provided for by law, he
shall be liable to pay the person aggrieved the sum of ten dollars
for each dollar excess of fees, that should be included in such bill
of cost, and in the same proportion for a greater or less sum."
Sect. 15.  " If any attorney, or other person practising before any
court, shall knowingly make up, take, or receive, a greater sum, in
any bill of costs, than is provided for by law, he shall pay to the
person aggrieved," &c.    Sect. 16.  " If any officer, or other per-
son, shall receive any greater fees, than is provided for by law, he
shall pay," &c.

Here seems, in terms, a plain provision, that, if any attorney
shall *knowingly* make up, *take,* or *receive, any greater sum,* &c.,
and if any other officer, or person, *shall receive,* whether knowingly,
or not, he shall be subjected to the tenfold penalty.   Any man, at
all acquainted with the state of public feeling, would least of all look
for a discrimination in favor of attorneys in regard to receiving fees;
and perhaps no good reason can be conjectured, why they should
only be liable on proof of knowledge, and all others should be pre-
sumed to have knowledge of the illegality of fees taken by them-
The reasonable presumption, perhaps, would be, that those most
learned in the law would be less likely to offend ignorantly.    The

Henry *v.* Tilson.

truth is, no doubt, that no such discrimination was intended to be made. The present Revised Statute, upon this subject, is almost a literal transcript from the statute of 1821, except that there it is all in one section, and what now forms the sixteenth section is a mere summing up of the general provision, and extending it to *all persons.* This general sweeping clause would be supposed to be, in some sense, qualified and explained by the former part of the same section, when the word " *knowingly* " is twice used as to clerks and attorneys, and is omitted in the general clause merely for the sake of euphony, being, from its juxta position, almost necessarily implied. But when this general clause comes to be made a distinct section, the implication of the word knowingly is not so natural and obvious, as when it was all one section.

It has sometimes been attempted to get rid of this apparent absurdity, by resort to another different form in the phraseology of the different sections of the present statute. In the fourteenth and fifteenth sections the expression is, any "greater sum,"—in the sixteenth section, any " greater fees." The supposition has sometimes been made, that this was intended to be confined to such fees only, as are enumerated in the fee bill. But a recurrence to the history of legislation will here best explain the import of the present statute.

The first statute giving a penalty for taking illegal fees, passed in this state, was in 1802, and was as follows,—extending only to attorneys, sheriffs, deputy sheriffs, bailiffs and constables,—" If any of the persons aforesaid shall knowingly and wilfully demand and receive any more or greater fees, for any services by them, or either of them, performed, than is allowed them by law, or shall demand and receive fees for services not performed, (unless it be for services which he is obliged by law to perform after receiving such fees,) he shall forfeit and pay to the party aggrieved four fold," &c. This statute continued in force until 1821, when it was extended to all officers and persons, and increasing the penalty to ten fold. No other alteration seems to have been intended to have been made in the law. The difference in the use of terms was doubtless merely accidental at the time, and has been adopted into the present revision.

We conclude, then, that if any officer, or other person, knowingly take any more or greater fees, that is, fees enumerated, or not enumerated, or for services not performed, (and which he is not bound

to perform, and when there is no substitution of one service for another, done fairly and *bona fide*, and not for the oppression of the person paying such fees,) that such person is liable to the penalty. The proof will be different in different cases, but must usually be a question of fact, to be determined under all the circumstances of the case.

In the present case the officer was clearly not entitled to pay for travel, except actual travel one way in the commitment, there being no return necessary;—but such a practice might have led him to conclude he was. The charge for " conveyance " is not, under ordinary circumstances, allowable; for if a man is able to endure a confinement, he is usually able to travel on foot, in order to reach the place of confinement; and the officer may walk with him, if he choose; or he may ride, and carry his prisoner at the same fee. This is an item of fees of modern invention,—at least in common cases of commitment for debt. The price of the copies may be determined by the number of words.

Judgment reversed, and new trial.