Pike v. Megoun et al.

---

ABRAHAM M. PIKE, Plaintiff in Error, *v.* SAMUEL MEGOUN *et al.*, Defendants in Error.

1. *Officer — Judicial and ministerial acts — Civil responsibility.*—A civil action does not lie against judges or magistrates, or persons acting judicially in a matter within the scope of their jurisdiction, however erroneous their decisions or corrupt and malicious their motives. But when duties which are purely ministerial are cast upon officers whose chief functions are judicial, and the ministerial duty is violated, the officer, although for most purposes a judge, is still civilly responsible for such misconduct. And the same rule obtains when judicial functions are cast upon a ministerial officer. But to render a judge acting in a ministerial capacity, or a ministerial officer acting in a judicial capacity, liable, it must be shown that his decisions were not merely erroneous, but that he acted from a spirit of willfulness, corruption, and malice.

2. *Elections — Registering officers — Duties and powers not fully judicial.*— The officers of registration, under the act of 1865 (Gen. Stat. 1865, App. p. 904), were neither judges nor judicial officers in a legal sense. Their duties were partly ministerial and partly judicial. Although sections 9 and 20 of that act devolved on them extensive powers and required an exercise of judgment, they were not thereby to be considered judicial officers to the full extent.

3. *Elections — Registering officers — Liability of, prior to the act of 1865 — Construction of that act.*— Prior to the enactment of any registration law the judges of election exercised essentially the same power in determining the qualification of a voter as the registering officers now exercise under the present system; yet all the cases hold that an action may be maintained against a judge of an election where he refuses, when acting in that capacity, to permit a qualified voter to exercise the right of suffrage; but as the judge of the election had to exercise his discretion, and acted *quasi* judicially, it would be necessary to allege and prove that such refusal was knowingly wrongful, malicious, or corrupt. By the act of 1868 (Sess. Acts 1868, § 23), the Legislature seems to have placed the same construction upon the act of 1865, touching the character of the registering officers.

4. *Legislature — Exposition of laws by — What weight attached to.*— A legislative exposition in regard to the construction of statutes, though not controlling authority, is still entitled to weight.

5. *Elections — Registration act of 1865 — Registration officers — Liability for refusing to receive votes.*— Under the law as it stood in 1866 (Gen. Stat. 1865, p. 904), the registering officers were not responsible for damages for refusing to register a person, however erroneous that refusal might have been, if it was produced merely by a mistake in judgment. But if the refusal was corrupt or actuated by malice, or to gratify personal spite, they would not be protected, but would be liable to an action by the person injured.

## *Error to Sixth District Court.*

*Lamb, Lewis, Lancaster,* and *Williams,* for plaintiff in error.

I. The demurrer ought not to have been sustained. 1. A judge or judicial officer, when acting judicially and within the limits of his jurisdiction, is not liable for any erroneous decision, whether made honestly or from corrupt and malicious motives. (Yates v. Lansing, 9 Johns. 395; Pratt v. Gardner, 2 Cush. 63; Burnham v. Stevens, 33 N. H. 252; Bailey v. Wiggins, 5 Harr. 472; Chickering v. Robinson, 3 Cush. 543; Evans v. Foster, 1 N. H. 375; Bumpus v. Fisher, 21 Texas, 562; Cunningham v. Bucklin, 8 Cow. 183; 2 Gray, 120.) 2. Neither a judge when acting ministerially, nor a ministerial officer when acting judicially, is

liable for erroneous decisions honestly made. (Reed v. Conway, 20 Mo. 22, 52–3; Jenkins v. Waldron, 11 Johns. 113; Humphrey v. Kingman, 5 Metc. 162; Davis v. Strong, 31 Verm. 332; Stone v. Augusta, 46 Me. 137; Hovey v. Mayo, 43 Me. 322; State v. Dunnington, 12 Md. 340; Tozer v. Child, 7 Ellis & Bl. 377; 40 Eng. Law & Eq. 85; Peavey v. Robbins, 3 Jones, N. C., 339; Stone v. Graves, 8 Mo. 151; Bevard v. Hoffman, 18 Md. 480; Morgan v. Dudley, 18 B. Monr. 693; Vanderheyden v. Young, 11 Johns. 159.) 3. Both the judge when acting in a ministerial capacity, and the ministerial officer when acting in a *quasi* judicial capacity, are liable for errors committed from willfulness, corruption, and malice. (Reed v. Conway, 20 Mo. 52–3; Bacon v. Benchly, 2 Cush. 100; Caulfield v. Bullock, 18 B. Monr. 494; Tozer v. Child, 40 Eng. Law & Eq. 89; Harris v. Whitcomb, 4 Gray, 433; Chrisman v. Bruce, 1 Duvall, 63; Bevard v. Hoffman, 18 Md. 480; Stone v. Augusta, 46 Me. 137.)

II. To deprive a rightful voter of the exercise of his privilege is such a personal injury as will sustain an action for damages. (1 Hill. on Torts, 85, and notes; *id.* 142; Ashley v. White, 2 Raym. 948; 2 Hill. on Torts, 418; Henshaw v. Foster, 9 Pick. 312.) Election officers are liable for wrongfully rejecting a voter, even without any proof of malice or corruption. (Blanchard v. Stearns, 5 Metc. 298; Henshaw v. Foster, 9 Pick. 312; Kilham v. Ward, 2 Mass. 236; Lincoln v. Hapgood, 11 Mass. 350; Capen v. Foster, 12 Pick. 485; Ashley v. White, 2 Raym. 950.)

*Green & Wilson*, for defendants in error.

I. The act of the defendants in error, in excluding the plaintiff from registration, was the result of a judicial investigation or trial; and the decision and judgment rendered thereon was a judicial, and not a ministerial act. (Stone *et al.* v. Graves, 8 Mo. 148; Wertheimer v. Howard, 30 Mo. 420.) Civil action for damages will not lie against a judge or judicial officer, acting judicially, within the sphere of his jurisdiction, for any errors he may commit, "however erroneous his decisions, or corrupt and malicious his motives." (2 Chit. Pl., 13th Am. ed., 78; 2 Saund.

Pl. & Ev. 613 ; Broom's Leg. Max. 61, 65, 69 ; Yates v. Lansing, 5 Johns. 282 ; Vanderheyden v. Young, 11 Johns. 158 ; 3 Bouv. Inst., art. II, p. 181 ; Kavanaugh v. Brooklyn, 38 Barb. 232 ; Stone *et al.* v. Graves, 8 Mo. 148 ; Lennox v. Grant, *id.* 254 ; Rochester White Lead Co. v. City of Rochester, 3 Comst., N. Y., 466 ; Weaver v. Devendorf, 3 Denio, 120 ; Wilson v. The Mayor, etc., 1 Denio, 599.)

II. The case of Reed v. Conway, 20 Mo. 22, cited by the plaintiff in error, bears only upon the liability of the ministerial officer acting in a *quasi* judicial capacity, and therefore does not affect the case at bar.

WAGNER, Judge, delivered the opinion of the court.

This was an action by plaintiff against the defendants, as registration officers within and for Ralls county, for refusing to register plaintiff as a legally qualified voter. The petitioner avers that prior to the general election in 1866 the plaintiff was a resident of said county, and had been for many years previous thereto ; that he was legally qualified and entitled to be a voter therein ; that he took and subscribed the oath of loyalty prescribed by the constitution of this State, and in all respects complied with the requirements of the law, and that his qualification as a voter was well known to each and all of the defendants at that time ; but that said defendants, "conspiring together to cheat and defraud plaintiff out of his right to exercise the elective franchise, knowingly, willfully, corruptly, and unlawfully, jointly and severally, did refuse and exclude the name of plaintiff as a qualified voter, and refused to register him, or suffer him to be registered as such."

To this petition there was a demurrer, assigning as grounds of objection that the defendants, in their capacity of registration officers, acted judicially, and were not responsible in a civil proceeding. There was judgment for defendants on the demurrer in the Circuit Court, which was affirmed by a division of the judges in the District Court.

The question presented is one of considerable embarrassment, on account of the multiplied, various, and conflicting opinions

which have been entertained concerning ministerial and judicial acts. The proposition is undoubted, that wherever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action for the motives which influence him, and the manner in which such duties are performed. If corrupt or willful, he may be impeached or indicted, but he can not be prosecuted by an individual to obtain redress for the wrong which may have been done.

In all the cases, the rule is nowhere better laid down than by Fox, J., in Taaffe v. Downes, 3 Moore, P. C. 51. "The principle at law," he said, "of exemption from being sued for matters done by judges in their judicial capacity, is of great importance. It is necessary to the free and impartial administration of justice that the persons administering it should be uninfluenced by fear and unbiassed by hope. Judges have not been invested with this privilege for their own protection merely; it is calculated for the benefit of the people, by insuring to them a calm, steady, and impartial administration of justice; it is a principle coeval with the law of the land and the dispensation of justice in this country, and is founded on the very framework of the constitution. It is to be met with in the earliest books of the law, and has been continued down to the present time without one authority or *dictum* to the contrary. I think myself called upon in assertion of this principle, so vitally necessary to the administration of justice, to maintain it in such a manner as may be necessary to give it full effect and operation; still, however, not trenching in any manner on the rights of the subject, which this principle is intended to protect — not to injure or infringe — it appears to be most necessary that a judge administering justice shall not be liable to answer for acts done judicially by him, by the way of action or prosecution. They are only answerable for their judicial conduct in the high court of Parliament; and without the existence of this principle it is utterly impossible that there could be such a dispensation of justice as would have the effect of protecting the lives or property of the subject. A judge must — a judge ought — to be uninfluenced by any personal

consideration whatever operating on his mind when he is hearing a discussion concerning the rights of contending parties; otherwise, instead of hearing them abstractedly, a considerable portion of his attention must be devolved to himself. There is something so monstrous in the contrary doctrine that it would poison the very source of justice, and introduce a system of servility utterly inconsistent with the constitutional independence of the judges — an independence which it has been the work of ages to establish — and would be utterly inconsistent with the preservation of the rights and liberties of the subject."

In a very recent case in the Supreme Court of the United States (Randall v. Brigham, 7 Wall. 523), it was declared to be the established law, and as the result of the authorities, that judicial officers are exempt from liability in a civil action for their judicial acts done within their jurisdiction, and judges of superior or general authority are exempt from such liability, even where their judicial acts are in excess of their jurisdiction, unless, perhaps, where the acts in excess of their jurisdiction are done maliciously or corruptly.

An action, then, does not lie against judges or magistrates, or persons acting judicially in a matter within the scope of their jurisdiction, however erroneous their judgment or corrupt and malicious their motives. (Cases *supra*, also, Stone v. Graves,. 8 Mo. 148; Yates v. Lansing, 5 Johns. 282; 9 Johns. 395; Cunningham v. Bucklin, 8 Cow. 178; Briggs v. Wardwell, 10 Mass. 358; Doswell v. Impey, 1 Barn. & Cress. 169; Phelps v. Sill, 1 Day, 315.) But there is a limit to this judicial immunity. The civil remedy depends exclusively upon the nature of the duty which has been violated. When duties which are purely ministerial are cast upon officers whose chief functions are judicial, and the ministerial duty is violated, the officer, although for most purposes a judge, is still civilly responsible for such misconduct. (Wilson v. The Mayor, etc., 1 Den. 599; Rochester White Lead Co. v. City of Rochester, 3 Comst. 463.) And the same rule obtains where judicial functions are cast upon a ministerial officer. But to render a judge acting in a ministerial capacity, or a ministerial officer acting in a capacity in its nature

judicial, liable, it must be shown that his decisions were not merely erroneous, but that he acted from a spirit of willfulness, corruption, and malice ; in other words, that his action was knowingly wrongful, and not according to his honest convictions in respect of his duty. (Reed v. Conway, 20 Mo. 22 ; Caulfield v. Bullock, 18 B. Monr. 494.) In the case of Weaver v. Devendorf, 3 Denio, 117, it was adjudged that the duty of assessors in determining the value of property was in its nature judicial ; but the learned judge who delivered the opinion in that case went further, and declared that when they thus acted, in a matter over which they had jurisdiction, they were not civilly responsible, however erroneous their decision might have been, or however malicious the motives which produced it. Previous to that time it is believed that no case can be found, either English or American, where the doctrine of exemption, applied to a ministerial officer, although acting judicially, was held in as broad terms. The language was not necessary to the decision of the case, for the judge expressly says that there was no proof whatever that the assessors acted otherwise than honestly, and there was no attempt to show that they acted willfully or corruptly. The decision of the case was right upon the facts, but the broad manner in which exemption from liability was declared, as to the action of the officers, must be regarded as *dicta*.

As far as the real decision in Weaver v. Devendorf goes, it has been steadily adhered to and followed by the courts in New York, and it is invariably held that the office of assessor, in determining what property is subject to and what is exempt from taxation, is judicial ; and the assessor, in determining such questions, acts judicially, and is not liable for errors committed in arriving at his conclusions upon that subject. (See Barhyte v. Shepherd, 35 N. Y. 238, where the cases are cited and reviewed.) But in all the cases the question was as to making the officers liable for a mistake or error in judgment, and there was either no allegation or proof of fraudulent conduct, corruption, or malice. These cases, therefore, are in perfect harmony and accord with the rule above laid down, that to fix responsibility on the officer it is

necessary to show that his action was willful and corrupt, and against his honest convictions in respect of his duty.

The next inquiry is, were the officers of registration, under the act of 1865, judicial officers or not? In the full sense of the term, the answer must certainly be in the negative. They were neither judges nor judicial officers in the legal meaning of these characters. Their duties were partly ministerial and partly judicial; that is, they were required to exercise a discretion and judgment when determining the qualifications of those presenting themselves for registration. Duties of a similar character frequently devolve on sheriffs and other ministerial officers; but it was never supposed that they became judicial officers in consequence thereof. They have none of the attributes of a judge — a person whose office is to administer justice in courts held for that purpose, who is authorized by law to hear and determine causes, and who holds courts statedly for the accomplishment of that end. The general nature and object of the office of registrator is to make a list of the voters, to register all who have the qualifications prescribed by the constitution, and who will take the oath of loyalty required by that instrument, and who are not proved by evidence, or known to the officer, to have committed any of the acts or been guilty of any of the offences enumerated in section 3 of article II of the constitution. The executive act of making the list is ministerial; but, for the purpose of ascertaining the necessary qualifications, the ninth section of the act of 1865 gave the registration officers power to examine, under oath, any person applying for registration as to his qualifications as a voter, and empowered them before entering the name of any person upon the register of qualified voters, diligently to inquire and ascertain that he had done none of the acts specified in the constitution as causes a disqualification; and if, from their own knowledge, or from evidence brought before them, they should be satisfied that the person so applying was disqualified under any provision of the constitution, they should not enter his name as a qualified voter, though he might have taken and subscribed to the oath of loyalty. The section further invested the officers of registration with the power of adminis-

tering oaths to all parties appearing before them for registration or as witnesses. The twentieth section gave the registration officers, while discharging their duties, the powers of a judge of the Circuit Court, for the preservation of order at and around the place of registration, and also authorized them to summon and compel the attendance of witnesses for the purpose of ascertaining the qualifications of persons registered or applying for registration.

The above provisions devolve on the registration officers extensive powers and require an exercise of judgment, but they are not thereby to be considered judicial officers to the full extent. Throughout the whole act there is a blending of ministerial and judicial functions.

Prior to the enactment of any registration law, the judges of election exercised essentially the same power in determining the qualification of a voter as the registering officers now exercise under the present system ; yet all the cases hold that an action may be maintained against a judge of an election where he refuses, when acting in that capacity, to permit a qualified voter to exercise the right of suffrage ; but as the judge of the election had to exercise his discretion, and acted *quasi* judicially, it would be necessary to allege and prove that such refusal was knowingly wrongful, malicious, or corrupt.

The Legislature seems to have placed the same construction on the act of 1866, for, in the 23d section of the registration act of 1868, they provide " that the board of registration or any member thereof, shall not be held responsible for damages for refusing to register any one as a legal voter in accordance with the spirit and intent of this act, or the constitution of Missouri." This shows the general interpretation given to the law by the law-making body. A legislative exposition in regard to the construction of statutes, though not controlling authority, is still entitled to weight. (Rex v. Loxdale, 1 Burr. 447 ; Constant v. The People, 11 Wend. 511 ; Henry v. Tilson, 17 Verm. 479.)

The conclusion is that, under the law as it stood in 1866, the registration officers were not responsible for refusing to register a person, however erroneous that refusal might have been, if it was

produced merely by a mistake in judgment. But if the refusal was corrupt, or actuated by malice, or to gratify personal spite, they would not be protected, but would be liable to an action by the person injured.

I think the demurrer should be overruled and the defendants have leave to answer. The judgment will therefore be reversed and the cause remanded. The other judges concur.