Robinson, J.
The question here presented is the construction of Sections 5432 and 5433, General Code, and especially of the clause, “gross amount of premiums received by it from policies covering risks within this state * * * without * * * any deductions whatever,” in Section 5432, General Code.
The question as to the meaning of the term “gross amount of premiums received” is not a new one in the courts of the United States, nor in the courts of many of the states, but has never been settled in Ohio, and were it not for the words “without * * * any deductions whatever,” or were these sections as they now exist the first enactments upon the subject in Ohio, we would have little difficulty in arriving at the conclusion that the term “gross amount of premiums received” from policies covering risks within this state contemplated only the premiums actually paid by the policy holders to the insurance company; for clearly the designation as a dividend of the credit which the insurance company allows each policy holder annually is a misnomer and the credit so designated represents nothing more than the amount of reserve fund to the credit of the insured; and were the sum so designated as a dividend withdrawn in any year by the insured the company would be required either to collect a like sum *236 for the purpose of replacing the reserve fund to the credit of the insured, or obliged to carry the risk without a reserve fund, and would be face to face with a condition of insolvency upon the happening of any extraordinary per cent, of casualties or upon an extraordinary shrinkage of income from investments.
The weight of authority, both in the federal courts and the state courts other than Ohio, is in accord with the foregoing theory, but as early as 1893 the legislature of Ohio by enactment, 90 Ohio Laws,’201, placed its own interpretation upon the term “gross premium and assessment receipts” of insurance companies, and by a clear and indubitable inference declared “gross premium and assessment receipts” to mean the premiums stipulated on the face of the policies, in the following language:
“Every agency of an insurance company * * * transacting business in this state * * * incorporated by the authority of any other state * * * shall return to the auditor of each county in which such company or association does 'business * * * the amount of the gross premium and assessment receipts of such agency * * * provided, however, that in the case of regular companies, wherein policy holders participate in the surplus and earnings of the company, dividends or surplus from previous payments allowed and used in the payment of current premiums,, cancelation or surrender values * ’ * * shall be deducted from such gross receipts.”
For if the legislators did not understand the clause “amount of the gross premium and assess *237 ment receipts” to include “dividends or surplus from previous payments allowed and used in the payment of current premiums,” why did they add the proviso that where the policy holders participate in the surplus and earnings of the company such dividends and surplus “shall be deducted from such gross receipts?” Why provide for their deduction if not included ?
There is no other or possible explanation than that they contemplated the term “amount of the gross premium and assessment receipts” to include surplus and earnings used in the payment of premiums. It cannot be successfully urged that there is a distinction between the use of the term, “amount of the gross premium and assessment receipts,” as there used, and the term, “gross amount of premiums received,” as used in the present statute.
The term “amount of the gross premium and assessment receipts” as used by the legislature in that enactment has been carried either in that phraseology, or in the phraseology of the present statute, in the successive amendments and enactments upon that subject.
In 1902 (95 O. L., 290) the legislature amended the section by eliminating the provision for the deductions from gross premiums of “dividends or surplus from previous payments allowed and used in the payment of current premiums,”- and inserted the words, “without deductions for commissions, return premiums, or considerations paid for reinsurance, or any deductions whatever,” and the terms “gross premiums” and “without * * * *238 any deductions whatever,” have been carried in the statute every since and we cannot indulge the presumption that the legislature made the elimination of the one and the insertion of the other without purpose.
The authority of the legislature to impose an excise or franchise tax upon foreign corporations for the privilege of doing business in this state is no longer debatable in Ohio. ( The Southern Gum Co. et al. v. Laylin, 66 Ohio St., 578.) And the only limitation upon the power of the legislature in that respect is that it be reasonable, and that the operation of such tax be uniform upon all corporations of a class throughout the state.
The legislature then might have fixed, as the basis upon which to estimate the tax, the annual surrender value of the policy, the value of the policy at maturity, the amount of dividends earned on the Ohio investments, the amount of matured insurance paid, or any other reasonable basis.
If the legislature had the power to fix as the basis, of taxation the gross premium stipulated on the face of the policy, and it clearly appears from the reading of the statute now in force, in the light of the previous expressions of the legislature upon the same subject, that the legislature by the use of the term “gross premiums” did intend the gross premiums stipulated on the face of its policies, then it is the duty of the court to carry out such intent, upon the principle that where the legislature has by previous enactment expressly or by clear and indubitable implication defined the meaning of a phrase it is presumed thereafter to have used the *239 same phrase in connection with the same subject in the same sense. County-Seat of Linn County, 15 Kans., 500; Converse, Admr., v. The United States, 21 How., 463; United States v. Freeman, 3 How., 556; Henry v. Tilson, 17 Vt., 479; Struthers v. People, 116 Ill. App., 481, and Daniel v. Simms, 49 W. Va., 554:
There seems to be no room for argument that when the legislature, as it did in 90 Ohio Laws, 201, expressly provided for the deduction from “the gross premium and assessment receipts” of “dividends or surplus from previous payments” it understood, intended, and used the term “the gross premium and assessment receipts” as meaning the gross premiums stipulated on the face of the policies. This being so we are obliged, in view of the history of these sections and the continued use of the term “gross premiums” thereafter, and in view of the insertion of the provision “without * * * any deductions whatever,” upon the repeal of the provision for deduction for “dividends or surplus from previous payments,” to hold that the insurance commissioner is authorized to base each year the excise tax of insurance companies doing business in Ohio by virtue of the authority of another state upon the gross premiums stipulated to be paid on the face of the policies in force in Ohio during the preceding year.
The demurrer is therefore sustained, and the writ of mandamus is refused.

Writ refused.

Nichols, C. J., Jones, Matthias, Johnson and Wanamaker, JJ., concur.