**STATE ex rel., Linda COCHRAN, Relator,**

v.

**The Honorable John C. ANDREWS, Respondent.**

**No. WD 42738.**

Missouri Court of Appeals, Western District.

Oct. 30, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

T. Jefferson Stephens, Grant City, for relator.

David A. Baird, Pros. Atty., Maryville, for respondent.

Before BERREY, P.J., and
SHANGLER and ULRICH, JJ.

BERREY, Judge.

This is an action for a writ of prohibition prohibiting respondent, the Honorable John C. Andrews, from proceeding in a probation violation hearing. Linda Cochran's request for a change of judge having been denied, she has instituted this cause.

On January 1, 1989, the Honorable John C. Andrews succeeded the Honorable Montgomery Wilson as Circuit Judge of the Fourth Judicial Circuit. Relator, a probationer, was commanded to appear before Judge Andrews for a "probation review" on September 11, 1989. Relator's brief reflects that September 11, 1989, was designated by Judge Andrews as the date that he would review the majority of probationers placed on probation by the court. Linda Cochran appeared as directed and the event was recorded, in its entirety, as follows:

JUDGE ANDREWS: You're Linda Cochran?

THE DEFENDANT: Yep.

JUDGE ANDREWS: You were placed on probation February of '87, is that correct?

THE DEFENDANT: Yes, sir.

MR. BAIRD: For five years, Your Honor.

JUDGE ANDREWS: How do you feel you're getting along?

THE DEFENDANT: Just fine.

JUDGE ANDREWS: Any problems?

THE DEFENDANT: Nope. Raising kids.

MR. BRADLEY: She's doing fine. She was placed on probation, well, she was on probation for another charge and

picked this one up. After she served some time in jail she transferred to the State of Iowa. I think everything is paid in full.

THE DEFENDANT: No, we're disputing but I have receipts and I was going to cover that today.

JUDGE ANDREWS: Any other questions?

THE DEFENDANT: No.

JUDGE ANDREWS: You're doing a good job.

THE DEFENDANT: Thanks.

JUDGE ANDREWS: Defendant appears in person and continued on probation.

On October 25, 1989, a capias warrant was issued and delivered to the Sheriff of Nodaway County, who filed it on October 27, 1989. On November 1, 1989, the prosecuting attorney filed a motion to revoke probation. Relator filed a request for a change of judge on November 9, 1989. This request was heard by Judge Andrews on November 13, 1989, and denied.

In the proceedings before us, relator argues that the trial court erred in denying her request for a change of judge. Whether this contention is correct depends on what time period is used to calculate the timeliness of relator's request. Relator would have us look at the period running from either the time of her arrest, October 25, 1989, or the time the motion to revoke was filed, November 1, 1989, to the time of her filing a motion for a change of judge on November 9, 1989. Respondent would have this period commence on September 11, 1989.

Section 217.765, RSMo 1986, provides for the power of the circuit courts to place persons on probation and parole. It states:

217.765. Judicial parole and probation—powers—exceptions—

1. The circuit courts of this state shall have power, herein provided, to place on probation or to parole persons convicted of any offense over which they have jurisdiction, except as otherwise provided in sections 195.200, 558.018, RSMo, and section 217.775.

2. The circuit court shall have the power to revoke the probation or parole previously granted and commit the person to the department of corrections and human resources. The circuit court shall determine any conditions of probation or parole for the defendant that it deems necessary to insure the successful completion of the probation or parole term, including the extension of any term of supervision for any person while on probation or parole. The circuit court may require that the defendant pay restitution for his crime. The probation or parole may be revoked for failure to pay restitution or for failure to conform his behavior to the conditions imposed by the circuit court. The circuit court may, in its discretion, credit any period of probation or parole as time served on a sentence.

The power of a judge to revoke a probation is not unlimited. Missouri law provides that, "Probation shall not be revoked without giving the probationer notice and an opportunity to be heard on the issues of whether he violated a condition of probation and, if he did, whether revocation is warranted under all the circumstances." § 59.036.4, RSMo 1986. Provision is made for the issuance of a notice to the probationer, "to appear to *answer a charge of a violation*." § 559.036.5, RSMo 1986 (emphasis added). Finally, it must be clear that the proceeding is indeed one of revocation:

The power of the court to revoke probation shall extend for the duration of the term of probation designated by the court and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period.

§ 559.036.6, RSMo 1986.

The required appearance of the probationer before the court on September

11, 1989, to assist the court's review of her probationary status was an exercise of the court's inherent authority necessary to properly "determine any conditions of probation ... that it deems necessary to insure the successful completion of the probation ... including the extension of any term of supervision...." § 217.765.2, RSMo 1986. Although the court then had authority to review the conditions of probation, the probationer's compliance with the conditions and her environment, to determine whether the conditions of probation should be amended, the court lacked authority to revoke probation. Before a court can revoke probation, a motion must be filed to invoke the court's jurisdiction to revoke probationer's probationary status. *Moore v. Stamps*, 507 S.W.2d 939, 950[13] (Mo.App.1974).

 Routinely, in compliance with directives of a probation officer or a court, probationers meet with probation officers who exercise supervisory authority. Probation officers reviewing compliance with the conditions of probation exercise a ministerial function. When the court requires the presence of a probationer to review the probationer's probation history and the prognosis for successful completion of the probationary status, the probationer's probationary status is not immediately in jeopardy. The probationer is not usually accompanied by legal counsel either when meeting with a probation officer or the court under conditions such as exist in this case. Due process does not require that legal counsel be provided the probationer, nor is the probationer necessarily entitled to have legal counsel present at such a time. The court is exercising a ministerial function. Only when the state, through the prosecuting attorney, attempts to revoke the probationary status by filing a motion with the court is the probationer's status as a probationer jeopardized. Only when the probationer's probation status is placed in jeopardy does the court have jurisdiction to revoke the probationer's probation. The court exercises its judicial function by conducting a hearing to determine the merits of the state's motion. When the probationer's status is jeopardized by the state's motion to revoke probation, due process entitles the probationer to representation by legal counsel.

Linda Cochran's compelled presence before the court on September 11, 1989, to facilitate the court's review of her status as a probationer was in the nature of a ministerial event, rather than a judicial event. The court exercised a ministerial function, and although the function was an important one, it was not "a solemn judicial event of consequence." The court was not considering revoking Linda Cochran's probation. It did not then have jurisdiction to revoke her probation. The court was not serving as the trier of law or fact in a case or controversy before it. The court could have requested directly or through the probation officer that the prosecutor file a motion to revoke the probationer's probationary status. Common practice! Without initiation of a controversy or case involving the issue of whether Linda Cochran breached the conditions of probation, no justiciable issue existed. Linda Cochran was not represented at the September 11 appearance and due process did not require that counsel be present to represent her interests.

 Linda Cochran could not exercise the provisions of Rule 51.05 or Rule 32.07 and seek a change of judge after Judge Andrews assumed authority over her probationary status because neither rule applied to her situation. The rules contemplate a case or controversy at issue before a judicial officer who will exercise the court's judicial function. Neither rule applies to a ministerial function such as we have in this matter.

Rule 51.05(a) provides that a change of judge "shall be ordered in any civil action upon the filing of a written application" without alleging or proving any cause for the change of judge requested. Subparagraph (b) requires that the application

"must be filed within thirty days after the answer is due to be filed if the trial judge is designated at the time the answer is due," and "[i]f no answer is required to be filed, the application must be filed no later than thirty days after the filing of the civil action." The rule contemplates the initiation of a civil action to trigger it. No civil action had been initiated.

Rule 32.07, a criminal rule, applied during the criminal proceeding which resulted in Linda Cochran's probationary status. Rule 32.07 provides that a change of judge shall occur "upon the filing of a written application therefor by any party" without alleging or proving any reason for the change, just as the civil rule provides. Like the civil rule, the application must be filed not later than thirty days after the trial judge is designated and the parties are notified. If the trial judge is not designated before thirty days prior to trial, the application must be filed prior to commencement of any proceedings on the record. The rule contemplates a trial or other judicial proceeding. Additionally, probation revocation is not a criminal proceeding. *Moore v. Stamps*, 507 S.W.2d 939, 949 (Mo.1974). Thus, Rule 32.07 appears not to be applicable to the situation presented.

Linda Cochran was not entitled to a change of judge under either Rule 51.04 or 32.07 when she appeared on September 11, 1989. Rule 51.05 applied when the state filed its motion to revoke. The relator never had a change of judge in this cause and she filed her application within thirty days of the time she received notice that a motion to revoke her probation had been filed by the state. The right of a defendant to disqualify a judge is a keystone to our judicial system and our courts adhere to a liberal rule construing the right to disqualify. *State ex rel. Horton v. House*, 646 S.W.2d 91, 93 (Mo. banc 1983). If she is denied the right to disqualify now she will never have had an opportunity to disqualify a judge who will pass on whether or not she should be imprisoned. *Id.* at 93. The relator is without jurisdiction to proceed further except to effect the change of judge sought by petitioner's motion.

The Preliminary Rule in Prohibition is made absolute.

SHANGLER, Judge, dissenting.

In this original action, our preliminary order issued to prohibit the circuit judge in State v. Linda Cochran, number CR886–382F, from any further exercise of jurisdiction in that revocation of probation proceeding, other than to sustain her application for change of judge. The majority now decide that the request for change of judge was timely and should have been granted as a matter of right, and make the preliminary order in prohibition permanent. I do not agree that the request was timely, and so dissent from the opinion.

Linda Cochran entered a plea of guilty before Circuit Judge Montgomery Wilson, to a felony count of manufacturing marihuana and to a misdemeanor count of possession of marihuana. The court sentenced her to five years imprisonment on the felony conviction and to a consecutive 180 days in the county jail. The sentence on the felony conviction was suspended and Cochran was placed on judicial probation for a period of five years.

On January 1, 1989, the respondent, Circuit Judge John C. Andrews, succeeded to the office of Circuit Judge Montgomery Wilson and to case number CR886–382F as well.

On August 21, 1989, a formal Notice issued under that case number and designation to Linda Cochran. It was an order to appear at the Nodaway County courthouse "at 1:30 p.m. on MONDAY, SEPTEMBER 11, 1989, before the Honorable John C. Andrews, for probation review." The Notice warned that "[f]ailure to appear will result in a WARRANT FOR YOUR ARREST being issued." The order issued under the signature of the Circuit Clerk.

On September 11, 1989, Cochran presented herself as ordered. The proceeding was

attended by the principals usual for a probation review: the sentencing judge [here, the successor and surrogate], the probationer, the prosecutor and the probation officer. The full proceedings are reported in the majority opinion. At the conclusion of the review, the judge entered the order: *Defendant appears in person and continued on probation.*

On October 25, 1989, Cochran was arrested under a probation violation warrant.

On November 1, 1989, the prosecution moved to revoke the Cochran probation.

On November 9, 1989, Cochran filed a request for change of judge.

On November 13, 1989, the Cochran request for change of judge was heard and denied. Cochran appeared in person and by counsel at that proceeding.

The majority determine that the right of a person under sentence of judicial probation to a change of judge does not accrue until that status "is placed in jeopardy" by a formal proceeding for revocation of probation. [At 923]. That is because the change of judge rules [civil and criminal] "contemplate a case or controversy at issue before a judicial officer who will exercise the court's judicial function." Moreover, only in a "case or controversy" is the judicial function of the court engaged. The administration of probation—such as probation review before Judge Andrews on September 11, 1989—does not place that status in jeopardy. Thus, it was only "a ministerial event, rather than a judicial event," and so not a "case or controversy to which the change of judge rules apply. *Id.* at 922. The right to change of judge, therefore, did not accrue to the probationer Cochran on September 11, 1989, but upon formal motion to revoke probation on November 1, 1989. Thus, the request for change of judge presented on November 9, 1989, was timely under Rule 51.05 and must be allowed.

The majority link each of these successive propositions to conclusion without explanation. They are without validity of any authority, other than the *ipse dixit* that postulates them. The opinion, in effect, treats the interval between the imposition of the sentence of probation and the proceeding for revocation as an empty "ministerial" continuum, devoid of adjudicative significance. It is unsound as a matter of doctrine as well as of necessary practice.

The term *ministerial* that the majority uses to make a point is inapt. A duty is *ministerial* where the public officer or tribunal confided with the power to act is required to perform upon a given state of facts in a prescribed manner in obedience to a course fixed by law, and leaves nothing to the exercise of discretion. *Yelton v. Becker*, 248 S.W.2d 86, 89[3, 4] (Mo.App. 1952). A duty is *judicial* where the tribunal confided with the power to act must exercise discretion and judgment as to whether or how the act shall be done. *Id.; Pike v. Megoun*, 44 Mo. 491, 498 (1869); 63A Am.Jur.2d *Public Officers and Employees* § 301 (1984). "An act which an officer may do or may not do, in the exercise of ... official discretion, cannot be considered a ministerial act." *State ex rel. Gentry v. Toliver*, 315 Mo. 737, 746, 287 S.W. 312, 316[3] (banc 1926).

The decision of the judge to grant or withhold probation, itself, is an act personal in quality. It is informed by the observations of the judge, the study and reports of the staff, and even by judicial intuition. It is a particular show of confidence by the particular judge in the defendant as a suitable risk for probation. That is to say, it is in every aspect an act of personal judgment and discretion. *State ex rel. O'Brien v. Murphy*, 592 S.W.2d 194, 196–97[4] (Mo. App.1979). A term of probation commences on the day it is imposed. § 559.036.1, RSMo 1986. The administration of that term engages the judicial function at numerous phases other than at a proceeding to revoke probation. The judge who grants probation sets the conditions, regularly reviews the performance by the probationer of those conditions, and may

modify them or even extend the term of probation before resorting to revocation of probation altogether. § 559.036.3. The judge may terminate the period of probation and discharge the defendant at any time before the completion of the term "if warranted by the conduct of the defendant and the ends of justice." This, except for the revocation, the court may do at discretion. *Ockel v. Riley*, 541 S.W.2d 535, 543[3] (Mo. banc 1976). These are judicial functions, among "the most important duties performed by the trial judge." *State ex rel. O'Brien v. Murphy*, 592 S.W.2d at 197.

The decision by the respondent Judge Andrews to continue the relator Cochran on probation after the probation review of September 11, 1989, was on an exercise of discretion. The event, although less than formal, was an occasion for information gathering to determine whether her performance under the existent conditions of probation was satisfactory or not, and to decide to discharge, or to impose other measures to complete the reformation, or event to revoke the probation altogether. § 559.036. It was a quintessential judicial act. *Gentry v. Toliver*, 287 S.W. at 315.

The *case or controversy* discussion in the opinion introduces an unnecessary distraction to whatever point is intended. The change of judge procedures are made to apply to criminal *cases* [Rule 32.07(b) & (c), and to *civil actions*, Rule 51.05(a) ], not to a *case or controversy*.[1] The awkwardness that this claim of right to change of judge poses derives not from any question of *claim or controversy* or of a ministerial exercise of the judicial power. It derives

from the idiosyncracy of a proceeding neither criminal nor civil, but *sui generis*.

It is already clear that Rule 32.07 governs the change of judge procedure in criminal actions and that Rule 51.05 governs in civil actions. It is also clear that a revocation of probation does not constitute an action separate from the original trial or plea that culminated in the sentence of probation, but rather extends from that adjudication. *State ex rel. O'Brien v. Murphy*, 592 S.W.2d at 196. The court that imposes probation as a sentence retains jurisdiction over the probationer throughout that period. *Id.* A peremptory disqualification of judge not invoked in the criminal action under Rule 32.07, therefore, is lost to the litigant at the revocation of the probation entered as a sentence in that criminal action. *Id.*

This rule nevertheless yields where the judge who imposes the sentence of probation and the judge who administers the term of probation are not the same. That was the case in *State ex rel. Horton v. House*, 646 S.W.2d 91 (Mo. banc 1983). The circuit court was recomposed geographically by the legislature, so that the judge who imposed the sentence of probation was not the same judge who had jurisdiction to revoke the probation. In those circumstances, where the judge was " 'other than a ... judge who ha[d] previously heard any phase of the matter,' " the probationer was entitled to exercise the prerogative for change of judge. *Id.* at 93.[2]

In this case, as in *House*, the judge designated to administer the probation is not the same judge who imposed the sentence

---

**1.** *Case or controversy,* or more aptly under usage of Missouri law, *justiciability,* relates to the requirement that a plaintiff show a personal stake in an outcome amendable to remedy in order to engage the judicial power at all. *Harrison v. Monroe County*, 716 S.W.2d 263, 266[1] (Mo. banc 1986); *State ex rel. Pulitzer Publishing Co. v. Coleman*, 347 Mo. 1238, 1257[5], 152 S.W.2d 640, 646[8] (banc 1941). It is not a principle that a judge who decides a *case or controversy* by that fact does not act in a ministerial capacity or that such a ministerial act is not within the judicial power—as the majority

opinion has it. *State ex rel. Pinger v. Reynolds*, 121 Mo.App. 699, 712–13, 97 S.W. 650, 654 (1906).

**2.** Since a hearing for revocation of probation is not a criminal proceeding, it is implicit that *House* sanctions Rule 51.05 under the singular circumstances presented. *See Moore v. Stamps*, 507 S.W.2d 939, 949[5–8] (Mo.App.1974); *Christy v. State*, 780 S.W.2d 704, 706 (Mo.App. 1989).

of probation in the case. In such circumstances, as *House* informs us, the rationale that denies to a defendant the right to a peremptory challenge for the first time at the revocation hearing of the judge who also imposed the sentence has no application. That is because the defendant was without earlier opportunity to challenge the judge at any earlier phase of the trial and probation proceeding. It remains to be said when the right to change of judge accrued to the defendant Cochran [relator here] in such circumstance.

A revocation of probation is not a criminal proceeding, so that change of judge Rule 32.07 does not govern. The essential incidents of such an adjudication, rather, resemble more those of a civil proceeding. *Gagnon v. Scarpelli*, 411 U.S. 778, 786–91, 93 S.Ct. 1756, 1761–64, 36 L.Ed.2d 656 (1973); *Moore v. Stamps*, 507 S.W.2d at 949[5–8]. The aims here were rehabilitive, not penal. That is to say, the administration of probation, no less than revocation of probation, resembles a civil rather than a criminal proceeding. *See* The Missouri Bar, 2 Missouri Criminal Practice §§ 29.2–29.8 (2d ed.1984).

Analogy suggests therefore that the Rule 51.05 procedure for change of judge in civil actions applies also for change of judge during the term of probation. The analogy of that rule, formulated in terms of *civil action*, however is not altogether apt. A probation is not a civil action, but a civil proceeding incident of a criminal conviction. § 217.650(7), RSMo 1986. Nor is a revocation of probation, which may result in a criminal sentence, a civil action. § 559.036.3. Thus, while the provisions of Rule 51.05(b) that define the time to bring an application for change of judge in terms of the filing of the civil action or pleadings due have no relevancy to proceedings during probation, the provision that "the application must be filed no later than thirty days after the designation of the trial

judge and notification to the parties" bears on when the right to change of judge accrues to a defendant on probation.[3]

The motion to revoke the Cochran probation was filed on November 1, 1989. The majority say that her request for change of judge filed on November 9, 1989, was timely. I disagree. I conclude that Rule 51.05 governs probation proceedings. Accordingly, the right to change of judge accrued to Cochran under Rule 51.05(b) "after the designation of the trial judge and notification to the parties or their attorneys." The Notice issued to Cochran on August 21, 1989, by order of Judge Andrews, which commanded her to be present before him on September 11, 1989, for probation review, was notification to Cochran that Judge Andrews had assumed the administration of her sentence of probation. It was also notification that Judge Andrews was the judicial officer who would decide any incident of that administration, including a revocation of probation. Thus, Cochran was notified no later than September 11, 1989, that Judge Andrews was the judge designated to decide the revocation of probation proceeding that eventuated. The request for change of judge by Cochran on November 9, 1989, was made more than thirty days after the designation of judge and notification to Cochran on September 11, 1989, and so was untimely.

Our supreme court en banc in *House* approved, as already noted, the right of a litigant to change a judge in a proceeding supplemental to the original action [such as a revocation of probation], but only as to a judge " 'other than a ... judge who ha[d] previously heard any phase of the matter.' " The majority opinion gives no attention to that holding.

The grant of probation to Cochran was the personal decision of Judge Montgomery Wilson, who presided at the proceeding that culminated in the criminal judgment against her. Judge Wilson retired and

---

**3.** Indeed, the parity between criminal procedure Rule 32.07 and civil procedure Rule 51.05 is that the right to change of judge accrues after the designation of the trial judge and notification to the parties.

Judge Andrews succeeded to his office and to this case. The probation review to which Cochran was summoned to appear on September 11, 1989, was an occasion for the personal assessment by Judge Andrews as to her performance under the conditions imposed, and whenever those conditions were to be changed. That review, however brief in colloquy, was attended by Cochran, the prosecutor, the probation officer, and of course by the judge. It was informed by the report of the probation officer and the explanation by Cochran of some dispute between them. The probation officer advised the court that Cochran was "doing fine", Cochran reported briefly on her activities, and the review was concluded with the order by Judge Andrews: "Defendant ... continued on probation." With that, a phase of the probation was decided by the judicial action of Judge Andrews.[4] With that, Cochran accepted Judge Andrews as a suitable adjudicator of that, and hence any successive, phase of the probation. It was from that date, September 11, 1989, that Cochran had notice that Judge Andrews was the judge designated to administer the probation and to render the decisions as to her performance.

The request for change of judge filed more than thirty days after September 11, 1989, was untimely. To compel the change of judge, as does the permanent order of prohibition the majority enter, improperly subverts a proceeding already begun by the court. *Reproductive Health Services v. Lee*, 660 S.W.2d 330, 340[20] (Mo.App. 1983). I would quash the preliminary order in prohibition and dismiss the petition. I dissent for the reasons given.

---

**4.** The formal Notice to Cochran that summoned her to the September 11, 1989, session of court was in terms of command and warned that arrest would follow noncompliance. It was explicitly a summons for probation review. Her obedience was not only required by the order, but by the usual conditions of probation. Whatever the brevity of the occasion, it had every trapping of a significant judicial event of consequence as the order and the conclusion of the proceeding that continued Cochran on probation attests.