LEA *et al.*, appellants, v. WOLFF *et al.*

*Trade-mark — geographical names — when trade-mark consisting of, protected.*

As a general rule geographical names cannot be appropriated as trade-marks; but the rule has an exception where the intention in the adoption of the descriptive word is not so much to indicate the place of manufacture, as to intrench upon the previous use and popularity of another trade-mark.

Plaintiff had manufactured at Worcestershire for many years an article known as "Worcestershire Sauce." Defendant commenced the manufacture at another place, of an article of similar character, which he named "Worcestershire Sauce." The labels, wrappers, etc., of plaintiff's article were closely imitated in size, color and appearance. *Held,* that plaintiff was entitled to an injunction prohibiting the use of the words "Worcestershire Sauce" on defendant's bills, labels and wrappers.

APPEAL from so much of an order of special term as denied an injunction *pendente lite,* restraining defendants from using the words "Worcestershire Sauce" as a trade-mark. The opinion states the case.

NOTE.—The opinion of presiding Justice INGRAHAM at special term was as follows: "The motion in this case is for an injunction to restrain the defendants from making or selling an article called Worcestershire Sauce, and from using any wrapper

*Charles W. Sandford,* for appellants.

*H. H. Shook,* for respondents.

FANCHER, J. The imitation of the plaintiffs' labels on the celebrated article of their preparation, was so palpable that the learned judge, at special term, granted an injunction against the defendants restraining such imitation. He, however, held, that in regard to the name "Worcestershire Sauce," it contains nothing but the name of the place where it is manufactured, and the word sauce as

or labels similar to those used by the plaintiffs. The plaintiffs claim to be the proprietors of this article, which they have been making and selling for many years under the name of Worcestershire Sauce, from the name of the place where they reside and carry on their business.

"Two questions are submitted in this case — one in regard to the name, which they claim to be a trade-mark; the other in regard to the labels and wrappers, which they have for a long time used in putting up the article for sale.

"In regard to the name, it is to be observed that it contains nothing but the name of the place where it is manufactured, and the word "sauce" as descriptive of the article sold.

"Neither of these words can be used in such a manner as to give the exclusive use of them as a trade-mark.

"The cases on this question are numerous; but I have heretofore had occasion to examine this question in *Wolfe* v. *Goulard*, 18 How. Pr. 64, and cited various authorities therein, I refer thereto without citing them again at this time. The question in that case was similar to the present, and it was then held that no exclusive use to the name of the place or of the article manufactured could be gained for a trade-mark.

"That case has been cited with approbation in various cases since that time : 12 Abb. 237 ; *Bininger* v. *Wattles*, 28 How. 206 ; S. C., 5 Abb. N. S. 212; *Burnett* v. *Phalon*, 3 Keyes, 594; *Newman* v. *Alvord*, 35 How. 108 ; S. C., 49 Barb. 588; 57 id. 526; 5 Phl. 464; *Falkinburgh* v. *Lucy*, 35 Cal. 52; and 13 Wall. 311.

"In a late case in the second district, of *Wolfe et al.* v. *W. Wolf Co.*, the same principle has been reiterated and the former decision sustained.

"The whole course of authority on this subject is uniform against the right of any party to obtain a trade-mark by such words.

"Upon the second question, as to the labels and wrappers, I am of the opinion that the plaintiffs are entitled to the injunction.

"The color of the paper, the words used, and the general appearance of the labels when used, show an evident design to give a representation of those used by the plaintiffs, and the directions for using it are an exact copy of the one used by the plaintiffs. It is impossible to adopt any conclusion other than that the intent was to lead purchasers, from the general appearance of the article, to suppose that it was the original Worcestershire Sauce which they were buying.

"It is true that the defendants have substituted their name as the manufacturers, but that alone will not relieve the defendants from the charge of an attempted imitation of the labels and wrappers fo the plaintiffs for the purpose of misleading purchasers. In the case of *Wolfe* v. *Goulard*, before cited, I suggested that the insertion of the name of the maker was a notice to the purchaser that the article was manufactured by other persons, but the general term subsequently held that the change of name did not relieve the defendants. The motion for injunction, so far as it relates to the name of the article sold, is denied, but granted as to the use of labels and wrappers in imitation of the plaintiffs."

descriptive of the article sold; and that neither of these words can be used in such a manner as to give the exclusive use of them as a trade-mark. The learned judge referred to several decisions as authority upon the point. Among them is a case decided by himself. *Wolfe* v. *Goulard*, 18 How. Pr. Rep. 64. That case has been cited with approbation in thirteen States of the Union. Perhaps the cases are so numerous as to establish a uniform current of authority in favor of the principle enunciated at special term. But we are not called upon to extend the principle to a case where it is not strictly applicable. For the purposes of this case it is not necessary to deny that the *name of the place where an article is manufactured*, and *the word which is descriptive* of the article manufactured, may not be used by any tradesman who there makes and vends the article. That is not this case. The defendants' preparation is not manufactured at "Worcestershire." The plaintiffs' is, and has been for more than thirty years past. The adoption, under such circumstances, of the very words contained in the plaintiffs' trademark, and the imitation in colors, size, language and appearance of their labels and wrappers, are irresistible proof of an intention of the defendants to deceive the public, and to lead purchasers to suppose that the defendants' preparation was the original "Worcestershire Sauce," so long manufactured by the plaintiffs. Where such an intention exists, the defendants should not be protected in their fraudulent imitation, by the pretense that in the words employed the name of a place and the word descriptive of the article only are used. The defendants, doubtless, might, under proper circumstances, employ the name of a place where an article is manufactured, as well as the word descriptive of its character; but such words must be employed honestly and properly, and not with a design to imitate and deceive to the detriment of another. Where words or names are in common use, no one person can claim a special appropriation of them to his peculiar use; but where words and the allocation of words, have, by long use, become known as designating the article of a particular manufacture, he acquires a right to them, as a trade-mark, which competing dealers cannot fraudulently invade. The essence of the wrong is the false representation and deceit. When the improper design is apparent, an injunction should be issued. In such cases injunctions have been sustained, though the name of a place, or of a celebrated person, were within the trade-mark, protected by the injunction. *Messerole*

v. *Tynberg*, 4 Abb. (N. S.) 410; *Matsell* v. *Flanagan*, 2 id. 459; *Amoskeag, etc., Co.* v. *Spear*, 2 Sandf. 599; *Caswell* v. *Davis*, 4 Abb. (N. S.) 6; *Newman* v. *Alvord*, 49 Barb. 588; *Watherspoon* v. *Currie*, 27 L. T. R. (N. S.) 393. In the last-mentioned case, the plaintiff had purchased from Fulton & Co., of Glenfield, near Paisley, the good-will and trade-mark of their business. They had for several years prior to 1847, manufactured powdered starch, principally from East India sago; and it was called "Glenfield Patent Double-refined Powder Starch," and commonly "Glenfield Starch." The plaintiff had actually removed his manufactory from Glenfield to Maxwelton, where the starch was made and sold when he applied for an injunction against John Currie, trading as Currie & Co. Currie had rented a small building from Fulton & Co., at Glenfield, where he manufactured starch, which was sold in packets similar in size and appearance to those of the plaintiff, and which he labeled "The Royal Palace Double-refined Patent Powder Starch, manufactured by Currie & Co., Glenfield." The plaintiff's case was, that the defendant had taken the small building at Glenfield, and adopted the mark or label containing the name of that place, for the express purpose of inducing people to believe that his starch was the article made by the plaintiff. The vice-chancellor granted an injunction, although the defendant was an actual resident at Glenfield, and his manufactory was there. It was dissolved on appeal, but re-instated and affirmed by the house of lords. The vice-chancellor said, "that no man had a right to avail himself of a trade-mark, or to adopt any other means, whereby he should induce people to purchase his goods under the belief that they were purchasing the goods of another man," and he was of opinion that "the defendant had pursued that course with the deliberate and fraudulent intention of palming off his starch upon the public as the starch of the plaintiff, and acquiring a sale of his starch by means of the connection and reputation of the plaintiff." In *Newman* v. *Alvord*, 49 Barb. 588, it appeared that the plaintiff for thirteen years had carried on business at the village of Akron, in the county of Erie, where they manufactured and sold cement or water-lime, which they designated as "Akron Cement" and "Akron Water-lime." The defendants manufactured an article in Onondaga county, which they labeled "Alvord's Onondaga Akron Cement or Water-lime, manufactured at Syracuse, New York." They were perpetually enjoined from using the word "Akron" on

their bills and labels, or in any other way in connection with the manufacture or sale of their cement or lime. The judgment awarding the injunction was affirmed at general term, and also by the commission of appeals. As a general rule, geographical names cannot be appropriated as trade-marks; but the rule has its exception, where the intention in the adoption of the descriptive word is not so much to indicate the place of manufacture, as to intrench upon the previous use and popularity of another trade-mark.

The order appealed from should be modified, and the injunction extended so as to prohibit the use of the words "Worcestershire Sauce" on the bills, labels and wrappers of the defendants.

BRADY, J., concurred.

*Ordered accordingly.*